WISCONSIN-MINNESOTA LIGHT & POWER COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.   [Chippewa Falls Gas Rate Case.]

*January 19—February 12, 1924.*

*Public utilities: Fixing of rates: Valuation of property of utility: Method: Inadequate return on existing rates: Further reduction: Power of commission: Of court: Estimates of commission.*

1. There is nothing in the statutes which prescribes any rule of valuation of the property of a public utility, or which even directs or limits the railroad commission as to the basis to be adopted ·in making its determination.   p. 99.
2. In the absence of such a statutory provision, it is not within the province of the court to lay down rules in an attempt to govern such a body in the performance of its duties.   p. 99.
3. The constitutional rights of a utility are not invaded by the pursuit of a wrong method of valuation, and in the absence of a method prescribed by statute the commission may proceed as it pleases, it being the result reached, and not the methods used, which is to be reviewed.   p. 99.
4. If the rate prescribed by the commission is confiscatory, the constitutional rights of the utility are invaded, and it is the duty of the court to give relief; and the court is not concluded by the findings of the commission if the final determination is assailed as violating a constitutional provision.   p. 100.
5. The ascertainment of the present fair value of a public utility is not a matter of formulas, but there must be a reasonable judgment having for its basis a proper consideration of all relevant facts.   p. 100.

Wisconsin-Minnesota L. & P. Co. v. Railroad Comm. 183 Wis. 96.

6. Under sec. 1797m—46, Stats. 1921, the commission cannot lawfully substitute its findings for existing rates until upon investigation it shall be found that the existing rates are unjust and unreasonable, which is a question of fact.  p. 102.

7. A rate which produces a net earning of less than five and eight-tenths per cent. on a valuation established by the commission cannot be said to be unreasonable or unjust.  p. 102.

8. In establishing a rate the commission has not, as the legislature has, plenary power, but possesses only the powers which have been conferred upon it by the legislature.  p. 102.

9. The power of the commission to substitute a rate found by it to be just and reasonable under sub. 1, sec. 1797m—46, Stats. 1921, is dependent upon the setting aside of an existing rate as unreasonable, and if such rate did not provide earnings sufficient to meet the amount allowable for depreciation and return on the present fair value of the property as fixed by the commission, the commission had no power to set the rate aside.  p. 103.

10. If in such circumstances a rate is charged which is disproportionate to the service rendered, the remedies are, (1) if capital is available, let the railroad commission issue a certificate of convenience and necessity to a second utility and permit the rate to be fixed competitively; or (2) let the municipality acquire the property.  p. 103.

11. An attempt to lower a rate which is not sufficient to earn a fair return upon the present fair market value of property can be successfully challenged under the Fourteenth amendment to the federal constitution.  p. 103.

12. The railroad commission is a fact-finding body, and is not invested with discretionary powers in the matter of rates.  p. 104.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Judgment of the circuit court for Dane county was entered March 26, 1923, dismissing an action brought by the plaintiff to set aside an order of the defendant *Railroad Commission* dated February 28, 1922, reducing gas rates in the city of Chippewa Falls. On May 1, 1919, the *Commission* valued the property of the utility in question at $106,500. This valuation was "based upon normal pre-war prices for pre-war construction and on actual or estimated investment cost for units of plant equipment."

In the proceeding initiated by the *Commission* the valua-

tion was fixed as of October 31, 1921, at the sum of $157,000. This amount was arrived at by adding to the 1919 valuation net additions from May 1, 1919, to October 31, 1921. From this as a rate base the *Commission* made certain computations and arrived at the conclusion that the schedule of rates could be reduced. The following table discloses a history of the rate situation since 1918:

*Net rates per 1,000 cubic feet.*

| Consumption. | Prior to June 29, 1918. | Order of June 29, 1918. | Order of May 1, 1920. | Order of Sept. 3, 1920. | Order of Feb. 28, 1922. |
|---|---|---|---|---|---|
| First   2,000 cu. ft..... | $1.30 | $1.60 | $1.85 | $2.35 | $2.20 |
| Next   3,000 cu. ft..... | 1.20 | 1.50 | 1.75 | 2.25 | 2.20 |
| Next   5,000 cu. ft..... | 1.10 | 1.40 | 1.65 | 2.15 | 2.10 |
| Next 20,000 cu. ft..... | .95 | 1.25 | 1.50 | 2.00 | 2.00 |
| Over 30,000 cu. ft..... | .75 | 1.05 | 1.30 | 1.80 | 1.80 |

The plaintiff commenced this action in the circuit court for Dane county to review the order of February 28, 1922. Hearing was had in the circuit court and a judgment affirming the order was entered, from which plaintiff appeals.

For the appellant there was a brief by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *H. L. Butler.*

For the respondent there was a brief by the *Attorney General* and *Ralph M. Hoyt* of Milwaukee, special counsel, and oral argument by *Mr. Hoyt.*

ROSENBERRY, J. It is the contention of the plaintiff that the order of the *Commission* of February 28, 1922, should be set aside on two grounds: (1st) because the order violated the statutory as well as the constitutional right of the

company to have the *Commission* prescribe its rates in accordance with lawful and constitutional principles of valuation and return; and (2d) because the rates prescribed in the order are in fact confiscatory, both as to rate base and return.

We shall now consider the first proposition made. So far as we are able to discover, the statute has prescribed no rule of valuation, nor in any way limited or even directed the *Commission* as to the basis to be adopted in making its determination. Sec. 1797*m*—5, Stats., provides:

"The commission shall value all the property of every public utility actually used and useful for the convenience of the public. In making such valuation the commission may avail itself of any information in possession of the state board of assessment."

Sec. 1797*m*—6 provides for hearing, filing of the report, and we find nothing in that or any other section indicating any basis upon which the *Commission* is directed to make its valuation. In the absence of such a statutory provision it is certainly not within the province of the court to lay down rules in an attempt to govern an administrative body in the performance of its duties. When the statute prescribes the manner in which administrative duties are to be performed, it is the duty of the court to enforce the statute. See *State v. Pullman Co.* 178 Wis. 240, 189 N. W. 543; *Eau Claire v. Wisconsin-Minnesota L. & P. Co.* 178 Wis. 207, 189 N. W. 476.

The constitutional rights of a utility are not invaded by the pursuit of a wrong method of valuation. In the absence of a method prescribed by the statute the *Commission* may proceed as it pleases. It is not its method that is to be reviewed but the result reached by the *Commission*. The statute charges the *Commission* with the duty of ascertaining and declaring a reasonable rate. If that is done, the method by which the *Commission* arrives at the result is not subject to criticism. If, however, the rate prescribed by the

*Commission* is confiscatory, the constitutional rights of the utility are invaded and it is the duty of the court to give relief.    However conclusive the finding of the *Commission* may be in respect to matters wholly within the statute, they cannot in a proper proceeding conclude the court when the final determination is assailed on the ground that it violates a constitutional provision.    *Ohio Valley W. Co. v. Ben Avon Borough,* 253 U. S. 287, 40 Sup. Ct. 527.

.We know of no constitutional principles of valuation.    It is not so long ago (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418 (1897); *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 152 N. W. 887—1915) that the utilities were before the courts contending with great earnestness that investment cost was the proper method of valuation, and the public authorities were claiming with equal earnestness and candor that cost of reproduction new less depreciation was the proper basis.    The situation is now exactly reversed.    Both views have been approved in greater or less degree by the courts where constitutional rights of parties are involved.    In that situation we do not see how it can be said that there is such a thing as constitutional principles of valuation.    The ascertainment of present ,fair value "is not a matter of formulas, but there must be a reasonable judgment having its basis on a proper consideration of all relevant facts." *Minnesota Rate Cases,* 230 U. S. 352, 434, 33 Sup. Ct. 729.

In this connection we make some observations in regard to the decision in *Waukesha G. & E. Co. v. Railroad Comm.* 181 Wis. 281, 194 N. W. 846.    Plaintiff contends that by that decision an arbitrary method of valuation is prescribed, which is inflexible, and puts the matter of valuation in a "straight-jacket."    If it is properly subject to that interpretation it should be corrected.    This court has no intention whatever of departing from the law as established by the supreme court of the United States in regard to valuation.    We were there discussing a situation in which it was claimed that cost of reproduction new less deprecia-

tion was a controlling element in determining the value of
the property of a public utility. It is expressly said that the
cost of reproduction new less depreciation must be con-
sidered. A court would need to be possessed of the powers
of omniscience in order to prescribe in advance all of the
elements and matters which may and should properly be
considered in determining the present fair value of the
property of a public utility. We there said, and we now
repeat after restudy of the recent cases there referred to,
that it is very difficult, if not impossible, to deduce from
the three cases what weight is to be attached to cost of re-
production new less depreciation, although in two cases the
judgments appealed from were reversed because sufficient
weight was not given to that factor. See 37 Harvard Law
Review, 289.

It is hardly necessary for us to say that we recognize that
the question involved arises under the Fourteenth amend-
ment to the constitution of the United States; that the law
is as established by the decisions of the federal courts and
that we shall apply it as laid down. Nor do we think any-
thing said in the *Waukesha Case,* fairly interpreted, indi-
cates anything else.

Upon the second proposition the matters urged here relate
principally to the establishment of the rate base. The valua-
tion fixed by the *Commission* was $157,000. The amount
available for return and depreciation for the year ending
October 31, 1921 (the period under consideration), was
$8,982.61. The *Commission* held that a fair return was
six per cent., a fair allowance for depreciation was two per
cent., which on the valuation fixed by the *Commission* would
amount to $12,560 per annum. Sec. 1797*m*—46 provides:

"If upon such investigation the rates, tolls, charges,
schedules or joint rates, shall be found to be unjust, unrea-
sonable, insufficient or unjustly discriminatory or to be
preferential or otherwise in violation of any of the provi-
sions of sections 1797*m*—1 to 1797*m*—109, inclusive, the

commission shall have power to fix and order substituted therefor such rate or rates, tolls, charges or schedules as shall be just and reasonable."

Under this section the *Commission* cannot lawfully substitute its findings for the existing rates until upon investigation it shall be found that the existing rates are unjust or unreasonable. Whether existing rates are unjust or unreasonable is a question of fact. We see no basis upon which it can be said that a rate which produces a net earning of less than five and eight-tenths per cent. upon the valuation established by the *Commission,* which is the fact in this case, can be said to be unreasonable or unjust. The power of the *Commission* to substitute a rate found by it to be just and reasonable under sub. 1 of sec. 1797*m*—46 is dependent upon the setting aside of the existing rate on the ground of unreasonableness. In the establishment of a rate the *Commission* has not, as the legislature has, plenary power, but possesses only the powers which have been conferred upon it by the legislature. *Interstate Comm. Comm. v. C., N. O. & T. P. R. Co.* 167 U. S. 479, 17 Sup. Ct. 896; Reeder, Validity of Rate Regulations, p. 62, sec. 37, and cases cited.

The order of February 28, 1922, is based upon no finding by the *Commission* to the effect that the then existing rate was unreasonable or unjust, although it is stated in the course of the recitals that the conclusion of the *Commission* is that the rates are too high. Whether that conclusion is based upon a statement that in the opinion of the *Commission* the rate exceeds the value of the services rendered or not, we are unable to determine. The order is "that the *Wisconsin-Minnesota Light & Power Company* withdraw its present schedule of rates in effect for gas service in the city of Chippewa Falls and substitute therefor the following schedule."

If it be assumed that this necessarily implies a finding on the part of the *Commission* that the then existing rate was unjust and unreasonable, we find no evidence upon which

that finding can be based. Whether a lower rate will produce more or less revenue is a matter of judgment and speculation. The *Commission* is not clothed with powers of management. The power to regulate does not include the function of a financial manager. *State ex rel. Southwestern Bell Tel. Co. v. Public Serv. Comm.* 262 U. S. 276, 43 Sup. Ct. 544.

The amount available in the *Commission's* valuation for depreciation and return being five and eight-tenths per cent., it did not have net earnings sufficient to meet the amount allowable for depreciation and return on the present fair value of its property as fixed by the *Commission.* The statute expressly provides that the *Commission* shall in fixing rates provide for depreciation. Sec. 1797*m*—15, Stats. The *Commission* therefore had no power to set aside the existing rate, as it was not in law either unjust or unreasonable, and the plaintiff was clearly within the protection of the Fourteenth amendment, even adopting the *Commission's* valuation as the rate base.

If it be argued that in such circumstances the utility might charge a rate wholly disproportionate to the value of the service rendered, in which event there would be no remedy, the answer, it seems to us, is that there are two: (1) the *Commission* may grant a certificate of convenience and necessity if capital is available for a second utility and thus permit the price to be fixed upon a competitive basis; or (2) the municipality may proceed to acquire the property under the provisions of the public utility act and operate it itself. If it be established that the service costs the consumer more than it is worth, the utility cannot be compelled to furnish it at less than cost including return and depreciation. *Brooks-Scanlon Co. v. Railroad Comm.* 251 U. S. 396, 40 Sup. Ct. 183. Any attempt to lower a rate which is not sufficient to earn a fair return upon the present fair value of the property can be successfully challenged under the Fourteenth amendment, and the legislature has not em-

powered the *Commission* to establish a new rate unless and until it shall be found that the existing rate is unjust or unreasonable. The word "unjust" cannot be construed to confer upon the *Commission* broad, equitable powers to be exercised in the discretion of the *Commission* on the one hand or powers of management upon the other. We have frequently called attention to the fact that the *Commission* is a fact-finding body. The law does not invest it with discretionary powers in the matter of rates. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 164, 116 N. W. 905.

*By the Court.*—The judgment of the circuit court is reversed, and cause remanded with directions to the circuit court to enter an order vacating and setting aside the order of the *Commission* dated February 28, 1922.