## QUARLES v. CITY OF APPLETON.

### No. 4337.

Circuit Court of Appeals, Seventh Circuit.
Nov. 26, 1930.

Rehearing Denied Feb. 5, 1931.

Louis Quarles and Maxwell H. Herriott, both of Milwaukee, Wis., for appellant.

Jerome R. North, of Green Bay, Wis., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This is an appeal from a judgment dismissing appellant's complaint, with costs. The same case was before us on a previous appeal, and the opinion therein rendered (299 F. 508) fully states the character of the litigation and the issues involved. For brevity, reference is made to that opinion. On the reversal of the judgment on that appeal, directions were given to the District Court to determine the reasonable value of the services rendered appellee by the waterworks company and to enter a judgment accordingly. On the retrial of the case, no additional evidence was offered. Whereupon the court

made this finding: "The Court finds the issues for the defendant."

It is argued for appellant that the evidence conclusively establishes a liability on the part of appellee. In other words, appellant's position is that the reasonable value of the services rendered exceeds the amount paid by appellee on any view of the testimony. It is contended, on the other hand, on behalf of appellee, that the evidence as to the value of the services rendered is conflicting, and there is ample support for the court's finding.

It is conceded that appellee paid the waterworks company for hydrant rental, etc., $57,488.05 for the period, November 1, 1904, to December 7, 1910. It likewise appears that for the period December 7, 1910, to November 30, 1911, appellee gave the waterworks company credit on its taxes in the sum of $10,554.71. It also appears that the waterworks company did not supply water in the amount and of the pressure required by appellee for fire protection. As to the extent of its deficiencies the witnesses differed widely.

Each side has submitted an array of impressive figures from which persuasive arguments have been made to support the conclusions for which each contends.

The full strength of appellant's argument is to be found in its position stated thus: Compensation for water furnished to a city by a public utility must be determined on the basis of a fair return on the capital actually and necessarily invested in the utility plant; that in the instant case, such valuation of property was made; that the proportion of this amount devoted to the city's service and the amount devoted to private users' service is readily ascertainable; that the court must allow a reasonable return on the sum devoted to city use.

On the hypothesis of an acceptance of this theory, appellant confidently asserts that a substantial amount is due. He also asserts that the rates of return recognized by the courts as reasonable make computations, with almost mathematical certainty, possible.

The argument is both interesting and novel. If the major premise of counsel's syllogism be adopted, his conclusion is hardly avoidable. But must the court accept the major premise? Must the court, in determining the reasonable value of services rendered by the waterworks company, allow a reasonable return on the fair value of the property devoted to such service? In other words, is not the worth of the services to the

user a factor which must be considered in appraising the value of the services? We think it is.

The transactions, relations, and disputes of the parties are traceable to a franchise, which expired by its own provisions in 1901. Unable to agree upon terms of a new franchise, the city and utility indulged in much fruitless litigation. Efforts without number were made to settle unliquidated claims and to adjust differences respecting proposed franchise provisions. In 1907 the Public Utilities Act of Wisconsin was enacted (Laws 1907, c. 499), and shortly thereafter the utility accepted an indeterminate permit from the state pursuant to the authority of that act. The city then promptly proceeded to take steps to acquire, by purchase, the property of the utility under the provisions of the same act. But the voters of the city refused to give the necessary authority. Thereafter, the city applied to the Wisconsin Commission for an order requiring the utility to improve its service. After due investigation, the commission rendered its decision on May 14, 1910. Respecting the services rendered, the commission said:

"It was not claimed by any of the engineers, either for the company or for the city, that the pumping facilities or the distribution system was adequate for fire protection * * * For the protection of property against loss by fire it is imperative that the plant be able to furnish adequate fire pressure at the earliest moment. The city is at present without adequate fire protection. * * * The matter of rates will be permitted to remain in status quo pending the reconstruction of the plant, as no rational adjustment can be made under existing circumstances."

Shortly after this decision the city again sought to acquire the utility, and upon due application, the Wisconsin Commission fixed the amount which the city was to pay for it. In its decision the commission again referred to the inadequate service which the utility rendered and said:

"That the plant is incapable of rendering reasonably adequate service to the public, that it will require an expenditure of a large sum of money as conceded by all the engineers who testified upon the hearing, to place the plant in a reasonably adequate and efficient operating condition * * * are important factors that cannot be excluded from consideration in determining the fair value of the plant as a going concern."

Following this decision by the Wisconsin Commission, further litigation ensued in the Wisconsin courts. Appleton Water Works Co. v. Railroad Commission, 154 Wis. 121, 142 N. W. 476, 47 L. R. A. (N. S.) 770, Ann. Cas. 1915B, 1160. The property of the utility was finally turned over to appellee and the price fixed by the Wisconsin Commission was paid therefor.

It would be both needless and space consuming to set forth the testimony of the witnesses, experts or otherwise, who enlightened the court on the character of the services rendered by the utility. It is sufficient to express our conclusions thereon, which are: (a) That the utility furnished sufficient water for flushing the sewers, etc.; (b) that the pressure by it maintained for fire protection was decidedly inadequate; that such inadequacy was largely due to the utility's failure to install adequate pumps. We also conclude that if the value of the services rendered by the utility is to be measured by its worth for fire protection to the users, the utility was adequately compensated by the city for the services rendered. At least, the evidence is such that we cannot disturb the court's finding as to this issue unless we adopt appellant's theory of compensation.

We are rejecting appellant's theory as to the measure of recovery both because of its harshness and because it is contrary to the authorities applicable to situations which are out of the ordinary. To say broadly that the value of the utility service to the consumer is immaterial is erroneous. There may be support for such a statement if it were limited to utilities which were fully meeting their obligations. For instance, a street car company may haul a passenger many miles for 7 cents. The reasonableness of the charge is ordinarily in no way dependent upon the value of the service to the passenger. A somewhat similar situation may be imagined in the case of a telephone service. But the test of the soundness of the rule, as applied to the instant case, comes when we inject the factor of a partial failure of service. In other words, the reasonable charge for the use of the telephone may be ordinarily determined by factors which entirely overlook the value of the service to the user. But if it be shown that there is a partial or complete failure of service and such failure is the regular and usual practice of the utility, a different situation is presented.

In the instant case, the city was interested in fire protection. Protection against fire was obtainable only through a constant and sufficient water pressure. A water pressure

such as the record shows was at times furnished by the utility in the instant case, was no protection against possible loss through fire.

It is not difficult to conceive of an extreme case. The waterworks plant might be complete in all respects save its pumping facilities which did not represent more than 10 per cent. of the cost of the total plant. Without engines and pumps the utility could not supply water. Could it be argued that the value of the service was nine-tenths what it would have been if the engines and pumps had been supplied? Hardly.

Most of the authorities dealing with the subject of compensation for services rendered by a utility are addressed to a fact situation which includes adequate service. United Rys. & Electric Co. v. West, 280 U. S. 234, 50 S. Ct. 123, 74 L. Ed. 390; Brooks-Scanlon Co. v. R. R. Comm., 251 U. S. 396, 399, 40 S. Ct. 183, 64 L. Ed. 323; Wisconsin-Minnesota L. & P. Co. v. R. R. Comm., 183 Wis. 96, 103, 197 N. W. 359; Bullock v. R. R. Comm., 254 U. S. 513, 520, 41 S. Ct. 193, 65 L. Ed. 380; Railroad Comm. v. East. Texas R. Co., 264 U. S. 79, 44 S. Ct. 247, 68 L. Ed. 569. In such cases these authorities hold generally that a utility is entitled to such compensation for services rendered as will produce a fair return upon the capital necessarily invested in producing the service. Only a few cases have arisen where the facts included either an unwarranted investment, inadequate service, or a consuming public too small to make complete use of the service offered. Among these authorities are: Covington & Lex. Turnpike R. Co. v. Sanford, 164 U. S. 578, 17 S. Ct. 198, 41 L. Ed. 560; San Diego Land & Town Co. v. Nat. City, 174 U. S. 739, 19 S. Ct. 804, 43 L. Ed. 1154; Darnell v. Edwards, 244 U. S. 564, 37 S. Ct. 701, 61 L. Ed. 1317; Georgia Ry. & Power Co. v. R. R. Comm., 262 U. S. 625, 43 S. Ct. 680, 67 L. Ed. 1144.

We conclude that the worth of the service to the consumer is a relevant factor to be considered along with others in determining the reasonable value of the services rendered by the waterworks company to appellee. This being so, it follows that there was evidence to support the finding of the court in favor of appellee. In other words, there was evidence in the record which sustained the appellee's contention that the reasonable value of the services rendered by the waterworks company did not exceed the sums paid by appellee for such services.

The judgment is affirmed.