MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent: CITY OF MILWAUKEE and another, Intervenors.*

*January 10—February 8, 1955.*

---

* Motion for rehearing denied, without costs, on April 5, 1955.

574

For the appellant there were briefs by *Lines, Spooner & Quarles* of Milwaukee, attorneys, and *Maxwell H. Herriott* of Milwaukee of counsel, and *Madigan & Thorsen* and *Browning & Parkin,* all of Chicago, Illinois, of counsel, and oral argument by *Mr. Herriott.*

For the respondent there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel for the Public Service Commission, and oral argument by *Mr. Torkelson.*

For the intervenors there was a brief by *Walter J. Mattison,* city attorney, and *Harry G. Slater,* first assistant city attorney, and oral argument by *Mr. Slater.*

CURRIE, J.   On December 30, 1952, petitioner purchased the tangible assets comprising the Milwaukee metropolitan local passenger-transportation system from the then owner, the Milwaukee Electric Railway & Transport Company, for $10,000,000. Under date of December 15, 1952, the commission had issued a certificate of authority authorizing such purchase, and retained jurisdiction with respect to the accounting entries to be placed on petitioner's books to record the acquisition of such assets. The commission subsequently apportioned $8,966,315.89 of the purchase price to "plant accounts," the remaining $1,033,684.11 representing the acquired materials and supplies, accounts receivable, prepaid taxes, and work in progess. The commission also determined that the depreciated original cost of the plant assets which petitioner had purchased for $8,966,315.89 as of December 30, 1952, was $13,872,028.26. In other words, the petitioner had purchased such plant assets at a purchase price of $4,905,712.37 less than the depreciated original cost of such assets as of the date of petitioner's purchase.

Petitioner, on May 1, 1953, made application to the commission for authority to put certain proposed new fares, representing an increase over then existing fares, into effect. Several hearings were held on such application and on September 17, 1953, the commission entered an order granting an increase of 10 cents in the weekly pass fares, which was less than petitioner had requested, and denied any increase in the cash fares. The findings incorporated in such order set forth a table of petitioner's estimated annual cost of operation, as determined by the commission. Such table showed an annual depreciation figure of $1,200,000 with an adjusting red figure of $327,047 labeled "amortization of acquisition adjustment." The insertion of such adjusting red figure in

effect reduced the amount of annual depreciation expense, allowed as a component part of the total annual operating expense, from $1,200,000 to $872,953. The $1,200,000 depreciation figure was based upon the original cost of the plant assets, while the $327,047 adjusting figure represented the sum of $4,905,712.37 (being the difference between the depreciated original cost of the plant assets and the price actually paid for the same by petitioner) amortized over the remaining estimated life of such plant assets of fifteen years.

The net effect of the commission's handling of the subject of depreciation in its fare order of September 17, 1953, was to base the depreciation allowed as an operating expense upon the price petitioner paid for the plant assets rather than upon the original cost of such assets. It is this act of the commission which petitioner challenges on this appeal, and its materiality will become apparent as we proceed.

On the basis of the annual income of petitioner under the fares permitted to be charged under said fare order of September 17, 1953, as estimated by the commission in its findings and opinion comprising part of such order, the rate of return to petitioner, based upon *original depreciated cost* of the plant assets plus the amount invested in materials and supplies, working funds, and prepayments, would be 2.91 per cent. On the other hand, the commission found in its fare order of September 17, 1953, that the estimated annual revenues under the fares authorized by such order would produce an annual return to petitioner of 7.35 per cent on *the net purchase price* paid by petitioner for the plant assets, less depreciation and plus the amount invested in materials and supplies, working funds, and prepayments.

Petitioner timely filed its application for rehearing which the commission denied by order dated October 16, 1953. Thereafter, petitioner instituted an action in the Dane county circuit court for review of the original order of September 17, 1953. While such review proceedings were pending, peti-

tioner on February 18, 1954, applied to the commission for further fare increases, and supplemented the same by a petition for emergency relief. On May 13, 1954, the commission entered an interim fare order granting petitioner authority to increase fares, and such increase was put into effect on May 16, 1954. It was because of this that the circuit court entered its order dismissing the review proceedings on the ground that the issues raised therein had become moot. Subsequent to the circuit court's order of dismissal the commission on November 5, 1954, entered a further fare order making permanent the increases allowed by the interim order and granting other increases, which new fares have also been put into effect. While such last-mentioned order is not a part of the record, we have taken judicial notice thereof pursuant to sec. 328.021, Stats.

With this factual background we will now proceed to consider the two issues confronting us on this appeal, viz.:

(1) Are the issues in the review proceedings rendered moot by reason of the subsequent fare order of May 13, 1954, and November 5, 1954, and the putting into effect of the new increased fares authorized thereby?

(2) If not rendered moot, does the commission's basing of depreciation upon the purchase price or investment cost to the new purchaser, instead of original cost, result in unreasonable fares, or a rate of return which is confiscatory thereby rendering the action of the commission unconstitutional?

It is conceded that the commission has followed the same method in computing depreciation of plant assets in the proceedings resulting in the subsequent fare orders of May 13, 1954, and November 5, 1954, which it employed in the findings and opinion portion of its fare order of September 17, 1953, now before us for review. Nevertheless, the commission contends, that as to a rate or fare order made by it with respect to a public utility (using "public utility" in its broad sense to include transport systems), the only

question for review under our Uniform Administrative Procedure Act (ch. 227, Stats.) is the reasonableness of the rates or fares fixed by the order and that the methods or computations employed in fixing such rates or fares are immaterial. In support of such contention, the commission cites our opinion in *Wisconsin-Minnesota L. & P. Co. v. Railroad Comm.* (1924), 183 Wis. 96, 99, 197 N. W. 359, wherein we stated:

"The constitutional rights of a utility are not invaded by the pursuit of a wrong method of valuation. In the absence of a method prescribed by the statute the commission may proceed as it pleases. It is not its method that is to be reviewed but the result reached by the commission. The statute charges the commission with the duty of ascertaining and declaring a reasonable rate. If that is done, the method by which the commission arrives at the result is not subject to criticism."

However, *Wisconsin-Minnesota L. & P. Co. v. Railroad Comm., supra,* was decided prior to the enactment of our Uniform Administrative Procedure Act, and we deem that such act may have broadened to some extent the scope of judicial review in Wisconsin of fare and rate orders of the Public Service Commission. Sec. 227.15 of such act provides in part as follows:

"Administrative decisions, which directly affect the legal rights, duties, or privileges of any person, whether affirmative or negative in form, . . . shall be subject to judicial review as provided in this chapter."

Sec. 227.20 (1), Stats., specifies the scope of judicial review and we quote the following provisions thereof as being of possible materiality on this appeal:

". . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions, or decisions being:

"(a) Contrary to constitutional rights or privileges; or
"(b) In excess of the statutory authority or jurisdiction
of the agency, or affected by other error of law; or . . .
"(e) Arbitrary or capricious."

The fares charged by petitioner in the operation of its
buses are subject to regulation by the commission under ch.
194, Stats., while the authority of the commission over the
fares charged passengers using petitioner's streetcars and
trackless trolleys is to be found in ch. 195, Stats., by reason
of the provisions of sec. 193.01 (1), Stats. It is conceded,
however, that the applicable statutes impose the duty upon
the commission to fix or approve fares which are *just and
reasonable* irrespective to which of the three types of trans-
poration service of the petitioner they may apply.

Petitioner contends that the commission's method of com-
puting depreciation of plant assets on the basis of petitioner's
investment cost (the purchase price paid by it to the former
transport company owner) instead of upon original cost
necessarily results in the fares fixed by the commission being
unreasonable and confiscatory. As hereinbefore noted, such
method is expressly set forth in the findings and opinion
portion of the 1953 fare order before us for review, and
concededly has also been employed in the 1954 fare orders
which the commission claims has rendered the controversy
moot. We consider the before-quoted portions of secs. 227.15
and 227.20 (1), Stats., confer the right of judicial review
over such method of computing depreciation in view of the
contention advanced that the employment of such method
necessarily results in unreasonable and confiscatory fares.

Such conclusion as to the scope of the authorized judicial
review necessarily disposes of the issue that the controversy
has been rendered moot by the subsequent 1954 fare orders.
The issue over the method of computation of depreciation
presents a continuing controversy, which was not ended by
the September 17, 1953, fare order being superseded by the

1954 fare orders, and, therefore, the controversy presented in the present review proceedings is not moot.

In *Boise City Irrigation & Land Co. v. Clark* (9th Cir. 1904), 131 Fed. 415, an order of the board of water commissioners fixed for a period of one year the maximum rate to be charged by a water utility. The corporate utility appealed on grounds that the order was unconstitutional. The board contended the appeal should be dismissed as moot because one year had expired and the order was no longer effective. The federal court rejected this contention, stating (p. 418):

"It is contended on the part of the appellees that, as the period for which the rate in question was fixed has expired, the case has become but little, if any, more than a moot case; but the courts have entertained and decided such cases heretofore, partly because the rate, once fixed, continues in force until changed as provided by law, *and partly because of the necessity or propriety of deciding some question of law presented which might serve to guide the municipal body when again called upon to act in the matter.*" (Emphasis supplied.)

This court had occasion in *Smith v. Smith* (1932), 209 Wis. 605, 245 N. W. 644, to consider the nature of a moot case and the opinion quotes definitions thereof from courts of other jurisdictions consistent with our holding herein. In that case an order was entered modifying a divorce decree so as to award custody of a child for a sixty-day period to the maternal grandfather. It was contended on appeal that the case was moot because the sixty-day period had expired. With respect to such contention this court stated (p. 609):

"There is every reason to believe that the defendant will again make a similar motion to modify the judgment. Since the trial court has the right to modify its judgment relating to the custody of this child whenever the interest of the child demands it (sec. 247.24, Stats.), we think that while the particular order complained of is moot, the controversy over

the custody of this child is not moot and should not be so considered, and that therefore the questions raised on this appeal should receive consideration to the end that if and when this controversy is revived it may be determined upon correct principles. and upon proper procedure."

Having concluded that the controversy before us on this appeal is not moot, we now turn to consideration of the issue presented on the merits of whether the allowance by the commission of depreciation of the plant assets based on petitioner's investment cost, instead of the original cost to the former owner of such assets, resulted in unreasonable or confiscatory fares.

Inasmuch as the commission's brief concedes that reasonable depreciation and amortization charges to cover the cost of the plant used in rendering public service is a proper operating expense allowable in the determination of reasonable fares, it is unnecessary to cite any of the numerous authorities so holding. From this conceded premise, and a quotation from Mr. Chief Justice STONE's opinion in *Federal Power Comm. v. Natural Gas Pipeline Co.* (1942), 315 U. S. 575, 595, 62 Sup. Ct. 736, 86 L. Ed. 1037, that the depreciation or amortization expense chargeable annually to earnings as an operating expense is *"in order to provide adequately for annual consumption of capital in the business,"* petitioner advances the hypothesis that the *capital consumed* must be that invested in the plant assets *when first devoted to public service*. However, we do not consider that such hypothesis urged by petitioner is necessarily the correct one when there has been a *bona fide* transfer and sale of the plant assets under circumstances whereby the purchaser has a different investment cost than the original owner.

Petitioner states that its plant assets will in time wear out and, if it is to continue in the transportation business its physical plant must eventually be replaced. Because of this it contends that the net depreciation allowance computed by

the commission will be insufficient to permit such replacement, which would in itself prove the commission's method of computing depreciation erroneous. The refutation of this argument is to be found in the dissenting opinion of Mr. Justice BRANDEIS in *Pacific Gas & E. Co. v. San Francisco* (1924), 265 U. S. 403, 424, 44 Sup. Ct. 537, 68 L. Ed. 1075, wherein he stated:

"Under the rule which fixes the rate base at the amount prudently invested, the inevitable errors incident to fixing the year's depreciation charge do not result in injustice either to the utility or to the community. If, when plant must be replaced, the amount set aside for depreciation proves to have been inadequate, and investment of new capital is required, the utility is permitted to earn the annual cost of the new capital."

We are primarily here concerned with whether basing allowable depreciation on petitioner's actual investment cost results in unreasonable fares. If the resulting fares are determined to be reasonable, then there is no constitutional problem presented of confiscatory rates or fares, as pointed out by Mr. Chief Justice STONE in *Federal Power Comm. v. Natural Gas Pipeline Co., supra.* (See 315 U. S. 586.) From the standpoint of both logic and equity we can perceive no good reason why fares, which, after allowing as an annual operating expense, depreciation and amortization charges sufficient to return to petitioner *all of its actual investment cost* of its plant assets over the remaining estimated life thereof, will provide a return of 7.35 per cent on petitioner's net investment cost of the property employed in the business, are unreasonable. It is true that the former owner sold such plant assets to petitioner at a price of $4,905,712.37 less than the depreciated original cost thereof as determined by the commission, and that, under the commission's method of computing future allowable depreciation as an operating expense chargeable to earnings, such $4,905,712.37 of origi-

nal cost to the former owner will never be recouped out of future earnings of the system. However, it is the former owner and not petitioner who has been prejudiced thereby, not by any action of the commission with respect to allowable depreciation, but by such former owner's voluntary act in selling at a price materially below depreciated original cost.

Petitioner relies upon the authority of *Harrisburg Steel Corp. v. Pennsylvania Public Utility Comm.* (Pa. 1954), 109 Atl. (2d) 719; and *Cities Service Gas Co. v. Federal Power Comm.* (10th Cir. 1946), 155 Fed. (2d) 694, affirming *In re Cities Service Gas Co.* (1943), 3 F. P. C. 549, to support its contention that depreciation must be based upon original cost and not the investment cost of the purchaser, where there has been a transfer as the result of a purchase and sale.

The *Harrisburg Steel Corp. Case* is readily distinguishable from the case at bar because grounded upon a Pennsylvania statute which gives the Pennsylvania regulatory commission power to require a public utility to establish and keep as part of its accounts continuing property records, and may require accounts and records in such manner "as to show, currently, the original cost of such property *when first devoted to the public service,* and the reserve accumulated to provide for the depreciation thereof." (Emphasis supplied.)

In the *Cities Service Gas Co. Case* (p. 702), the federal circuit court of appeals for the Tenth circuit in the majority opinion stated that the accrued depreciation of Cities Service had been "calculated as the sum of the annual depreciation expense *from the beginning of the property.*" From additional facts stated in the opinion in the proceedings below before the Federal Power Commission (3 F. P. C. 459, 470, 471) it appears that Cities Service acquired properties of an affiliate originally costing $3,893,031 for $380,512, and the commission's staff recommended that the original cost figure of $3,893,031 be used in arriving at original cost

of Cities Service's properties for purposes of computing depreciation. As pointed out by the Federal Power Commission, Cities Service made no objection to this.

There are two material differences between the facts in the *Cities Service Gas Co. Case* and those of the instant case. In the first place, the sale in the former was between affiliated corporations, while in the case at bar we have a sale at arm's length between seller and purchaser. Secondly, no party to the proceedings in the *Cities Service Gas Co. Case* contended that the Federal Power Commission's act of basing depreciation on original cost, instead of Cities Service's investment cost, resulted in unreasonable or confiscatory rates. We, therefore, do not consider the *Cities Service Gas Co. Case* to be a precedent that should control our decision in the instant case.

Petitioner's brief quotes a portion of the opinion of the Pennsylvania superior court in *Harrisburg Steel Corp. v. Pennsylvania Public Utility Comm., supra,* in which it criticizes as unfair to the ratepayers the act of the Pennsylvania regulatory commission in approving for rate-making purposes the deduction of amortization charges against income based upon the premium which the purchasing utility paid to the former owner over and above depreciated original cost. This is the exact antithesis of the fact situation in the instant case, but, if the Wisconsin commission is to be consistent with its action in the instant case, it would have to permit deduction of amortization charges to permit recoupment of a premium paid over and above depreciated original cost to acquire plant assets of a former operating owner, if it determined the purchase price did not transcend the rule of *"prudent investment."* As pointed out in *Waukesha Gas & E. Co. v. Railroad Comm.* (1923), 181 Wis. 281, 301, 194 N. W. 846, both the commission and this court are committed to the *"prudent investment"* theory in rate cases, and the application of this principle would afford protection to ratepayers

in case of a purchase by a utility of plant assets from a former operating owner at an excessive price.

The commission has a considerable latitude in matters of policy in regulating utilities and public transportation systems, because such questions of policy are generally the function of the commission and not the courts. Therefore, whatever accounting method the commission employs in computing allowable depreciation in a rate or fare case will not be disturbed upon judicial review unless it in itself results in producing rates or fares that are unjust or unreasonable.

In conclusion, it is our considered judgment that the commission's method of computing allowable depreciation attacked in the instant case does not result in unreasonable or confiscatory fares.

*By the Court.*—Order vacated, and cause remanded with directions to enter judgment confirming in all respects the fare order of the commission dated September 17, 1953.