IN THE MATTER OF THE APPLICATION OF THE DULUTH &
NORTHERN MINNESOTA RAILWAY COMPANY TO ABAN-
DON AND CLOSE FOR TRAFFIC ITS RAILWAY.
STATE v. DULUTH & NORTHERN MINNESOTA
RAILWAY COMPANY.[1]

July 22, 1921.

No. 22,423.

**Abandonment of line of railroad.**

1. Unless a railway company has contracted to keep its road in opera-
tion, it has the constitutional right to abandon it if it can no longer be
operated except at a loss.

**Railroad commission cannot authorize abandonment because of loss in
operation.**

2. Although a railway company may have the constitutional right to
abandon its road for the reason that it can be operated only at a loss,
the legislature has withheld from the Railroad and Warehouse Commis-
sion power to authorize an abandonment on that ground.

In the matter of the application of the Duluth & Northern Minnesota
Railway Company for permission to abandon and close its railway for
traffic, the attorney general appealed to the district court for Lake
county from an order of the Railroad and Warehouse Commission au-
thorizing the company to abandon its road and close it to traffic on and
after April 1, 1921. From an order, Daly, J., granting the attorney
general's motion to vacate the order of the commission, the railway
company appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*Clifford L. Hilton,* Attorney General, *C. H. Christopherson,* Assist-
ant Attorney General and *Henry G. Carleton,* Special Assistant Attorney
General, for respondent.

[1]Reported in 184 N. W. 186.

*Joseph Meyer* and *B. F. Fowler,* County Attorney of Lake County, filed a brief as amici curiae.

TAYLOR, C.

The Duluth & Northern Minnesota Railway Company made an application to the Railroad and Warehouse Commission for permission to abandon its railroad. The commission held extended hearings and on December 20, 1920, made an order authorizing the company to abandon the railroad and close it to traffic on and after April 1, 1921. The attorney general appealed from this order to the district court, and, at the hearing before the court, made a motion to set aside and vacate the order, on the ground that the facts found by the commission show that the commission had no power to make it. The court granted this motion by an order which, although somewhat peculiarly worded, unquestionably revoked the permission to abandon the road granted by the commission. The company appealed.

The statute provides:

"No company operating any line of railroad in the state of Minnesota shall abandon the same or any portion thereof, nor shall it abandon any siding, sidetrack, spur or other railway track of any kind which has once been opened and used for business, nor shall it close for traffic thereon except as provided in section 4424 as the same is hereinafter amended. Any company violating any provision of this section shall forfeit to the state not less than two hundred dollars nor more than one thousand dollars for each day such violation continues." Section 4423, G. S. 1913.

"Any such company desiring to abandon or close for traffic any portion of its line, siding, sidetrack, spur or other railway track, shall first make application to the commission in writing. Before passing upon such application the commission shall fix a time and place for hearing and require such notice thereof to be given as it deems reasonable. Upon the hearing, the commission shall ascertain the facts and make findings thereon, and if such facts satisfy the commission that the proposed abandonment or closing for traffic will not result in substantial injury to the public, they may allow the same, otherwise, it shall be de-

nied, or, if the facts warrant it, the application may be granted in a modified form." Section 4424, G. S. 1913.

From the findings of fact made by the commission it appears that the railway company was organized under the laws of the state of Minnesota in 1898; that the railroad extends from Knife river on the shore of Lake Superior northerly and northeasterly through Lake county into Cook county roughly parallelling the shore of the lake; that it was constructed in connection with the logging operations of the Alger-Smith Company and has always been financed, managed and controlled by that company, and stockholders of that company; that the earnings of the railroad have come mainly from the traffic furnished by the logging operations of that company; that that company has disposed of all its timber in the territory tributary to this road and no more traffic can be expected from that source, and that the road can be operated in the future only at a very substantial loss.

The commission made further findings to the effect that there was no public necessity for that portion of the road extending beyond the station of Cramer; that the road could be discontinued without serious inconvenience to residents along that portion of the line extending from Knife river to a point 15 miles beyond the station of Algers, a distance of about 32 miles, as they have access to other railroads, but that the discontinuance of the road would compel some 500 residents living along that portion of the line extending from the point 15 miles beyond the station of Algers to the station of Cramer, a distance of about 25 miles, either to ship out their products and bring in their supplies by water during the season of navigation, or haul them over wagon roads for distances varying from 15 to 40 miles.

After making these findings of fact and quoting from the statute and from the decision in Brooks-Scanlon Co. v. Railroad Commission, 251 U. S. 396, 40 Sup. Ct. 183, 64 L. ed. 323, in which it was held that a carrier cannot be compelled to carry on its business at a loss and may cease operating a railroad when it can be operated only at a loss, the commission stated:

"In view of the fact that the Duluth and Northern Minnesota Railway Company cannot operate its line of road except at a loss, the commission finds that the Duluth and Northern Minnesota Railway Company have the right to abandon the operation and use of the same as a common carrier  *  *  *  Therefore it is ordered that the Duluth and Northern Minnesota Railway Company are hereby permitted to abandon and close for traffic its line of railroad  *  *  *  after April 1st, A. D. 1921."

The court revoked this order on the ground that that statute had not given the commission power to authorize the abandonment of a railroad on a finding that it could be operated only at a loss, without a further finding that such abandonment would not result in substantial injury to the public.

That this railroad can be operated in the future only at a substantial loss, is not only found as a fact by the commission, but stands undisputed so far as the record before us discloses.

That a railroad company cannot be compelled to continue to operate its railroad when such operation can be carried on only at a loss, is settled by the decisions of the United States Supreme Court. Brooks-Scanlon Co. v. Railroad Comm. 251 U. S. 396, 40 Sup. Ct. 183, 64 L. ed. 323; Bullock v. State, 254 U. S. 513, 41 Sup. Ct. 193, 65 L. ed. —. These cases hold that to compel it to do so would be taking its property without compensation in violation of the rights secured to it by the Federal and state Constitutions. Of course a railway company which has assumed contractual obligations requiring it to operate its road may be compelled to do so, for railway companies, as well as individuals, are required to perform their contracts, but there is no claim that any obligation of that sort exists in the present case. If in fact the road can be operated only at a loss, the company has the legal right, under the Federal decisions, to close it to traffic and dismantle it.

Whether, where a railway company claims the right to abandon and dismantle its road on the ground that it can be operated only at a loss, the state may require the company to accept the junk value of the road, if there can be a purchaser who will take it at such value and undertake to continue it in operation, has been considered to some extent by the

150 M.—3.

courts as is shown by the decisions cited in the note found in 8 A. L. R. at page 238, but that question is not involved in this case.

The statute, under which this proceeding was brought, was enacted long before the Federal Supreme Court announced that a railway company had the constitutional right to abandon its road, unless it could be operated at a profit, and the legislature, in enacting the statute, apparently did not have in mind such a situation as is here presented, and made no provision for it. While it might seem desirable that the question whether a railway company has the right to abandon its road because it cannot be operated at a loss, should be determined in some orderly and authoritative manner before the road is closed to traffic, and while the Railroad and Warehouse Commission is probably the only agency of the state which possesses the facilities and machinery for ascertaining and determining the questions of fact involved, yet that commission possesses only the authority given to it by the legislature and cannot exceed the bounds to its power fixed by the legislature.

It is urged that the legislature has not empowered the commission to authorize the abandonment of an entire line of railroad under any circumstances, but it is not necessary to determine that question in this case. The statute, after providing for a hearing, further provides:

"Upon the hearing the commission shall ascertain the facts and make findings thereon, and if such facts satisfy the commission that the proposed abandonment or closing for traffic will not result in substantial injury to the public, they may allow the same, otherwise, it shall be denied." [Section 4424.]

By this provision the legislature has expressly limited the power of the commission to authorize an abandonment to those cases in which they find as a fact that such abandonment "will not result in substantial injury to the public." They did not find such fact in the present case; on the contrary, they found, in effect, that the proposed abandonment would result prejudicially to a large number of permanent residents served by the road who have no other convenient access to the markets of the country. Consequently, by reason of the express limitation imposed by the legislature, the commission was without power to make the order here in question. Of course insofar as the prohibitory provi-

sions of the statute infringe the constitutional rights of the company. such provisions cannot be enforced. But the only question here presented is whether the commission assumed to exercise a power which it did not possess, and, as we find that it did, the order of the trial court is affirmed.