## BROOKS–SCANLON COMPANY *v.* RAILROAD COMMISSION OF LOUISIANA.

### CERTIORARI TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 386.   Argued January 6, 1920.—Decided February 2, 1920.

A common carrier cannot, under the Fourteenth Amendment, be compelled by. a State to continue operation of its railroad at a loss. P. 399.

Where a railroad serving the public is owned and operated by a lumber company in connection with its lumber business, it is the business of the railroad and not the entire business of the company which determines whether the railroad may be abandoned as unprofitable. *Id.*

A mere suggestion in the opinion of a state court unsupported by evidence, cannot be taken as a finding of fact in determining the scope and ground of its decision. *Id.*

Nor can a statement that the court has not jurisdiction to consider relief claimed under the Federal Constitution, because the plaintiff has not complied with formalities under the state law, be taken as placing the decision on a state ground, when the court actually passes upon and denies the merits of plaintiff's claim, gives relief against plaintiff, and devotes its opinion almost entirely to explaining and justifying such course.   P. 400.

Forms imposed by local law cannot enable courts and commissions to do what the Federal Constitution forbids.  *Id.*

144 Louisiana, 1086, reversed.

THE case is stated in the opinion.

*Mr. J. Blanc Monroe* and *Mr. Robert R. Reid,* with whom *Mr. Monte M. Lemann* was on the briefs, for petitioner.

*Mr. W. M. Barrow,* Assistant Attorney General of the State of Louisiana, with whom *Mr. A. V. Coco,*

Attorney General of the State of Louisiana, was on the briefs, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit by the Brooks-Scanlon Company, a Minnesota corporation organized to manufacture and deal in lumber and to carry on other incidental business, against the Railroad Commission of Louisiana. It seeks to set aside an order (Number 2228) of the Commission requiring the plaintiff either directly or through arrangements made with the Kentwood and Eastern Railway Company, to operate its narrow gauge railroad between Kentwood and Hackley, in Louisiana, upon schedules and days to be approved by the Commission. The plaintiff alleges that the order cannot be complied with except at a loss of more than $1500 a month, and that to compel compliance would deprive the plaintiff of its property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States, with other objections not necessary to be mentioned here. The defendant denies the plaintiff's allegations and in reconvention prays for an injunction against the tearing up or abandoning of the road and for a mandate upholding the order. In the Court of first instance a preliminary injunction was issued in favor of the Commission, but was dissolved upon bond. Subsequently a judgment was entered denying a motion of the Commission to set aside the order dissolving the injunction, and after a trial on the merits judgment was entered for the plaintiff, declaring the order void. The defendant appealed from both judgments to the Supreme Court of the State. That Court reversed the decision below and reinstated the injunction granted on the defendant's prayer.

It seems that the Banner Lumber Company, a Louis-
iana corporation, formerly owned timber lands, sawmills
and this narrow gauge railroad. The road was primarily
a logging road but it may be assumed to have done busi-
ness for third persons as a common carrier. The Banner
Lumber Company sold the whole property to the Brooks-
Scanlon Lumber Company on November 1, 1905, the
stockholders of which obtained a charter for the railroad
as the Kentwood and Eastern Railway Company on
December 5 of the same year. In the interim it was
managed by them with separate accounts. An oral
lease of the road was made to the new company and
soon afterwards the Brooks-Scanlon Lumber Company
transferred its property to the Brooks-Scanlon Company,
the petitioner. On the first of July, 1906, the Brooks-
Scanlon Company made a written lease of the road to
the Railway Company and sold to it all the rolling stock
and personal property used in connection with the road.
Thereafter the road was run as before, doing a small
business as a common carrier but depending upon the
carrying of logs and lumber to make it a profitable rather
than a losing concern. In course of time the timber of
the Brooks-Scanlon Company was cut and it terminated
the lease to the Railway Company, which discontinued
business on April 22, 1918, with the assent of the Rail-
road Commission, and sold its rolling stock. At that
time the Commission being advised that it had no power
did nothing more. But later, subsequent to a decision
by the Supreme Court in May, it issued notice to the
Brooks-Scanlon Company and the Railway to show
cause why the road should not be operated, gave a hear-
ing, and issued the order complained of here. The Su-
preme Court, after saying that the two corporations
were one under different names, stated that the only
question left for determination was whether the plain-
tiff could be compelled by the Commission to operate

its railroad, and concluded that although the railroad showed a loss, the test of the plaintiff's rights was the net result of the whole enterprise—the entire business of the corporation—and on that ground made its decree.

We are of opinion that the test applied was wrong under the decisions of this Court. A carrier cannot be compelled to carry on even a branch of business at a loss, much less the whole business of carriage. On this point it is enough to refer to *Northern Pacific Ry. Co.* v. *North Dakota*, 236 U. S. 585, 595, 599, 600, 604, and *Norfolk & Western Ry. Co.* v. *West Virginia,* 236 U. S. 605, 609, 614. It is true that if a railroad continues to exercise the power conferred upon it by a charter from a State, the State may require it to fulfil an obligation imposed by the charter even though fulfilment in that particular may cause a loss. *Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262, 276, 278. But that special rule is far from throwing any doubt upon a general principle too well established to need further argument here. The plaintiff may be making money from its sawmill and lumber business but it no more can be compelled to spend that than it can be compelled to spend any other money to maintain a railroad for the benefit of others who do not care to pay for it. If the plaintiff be taken to have granted to the public an interest in the use of the railroad it may withdraw its grant by discontinuing the use when that use can be kept up only at a loss. *Munn* v. *Illinois*, 94 U. S. 113, 126. The principle is illustrated by the many cases in which the constitutionality of a rate is shown to depend upon whether it yields to the parties concerned a fair return.

While the decision below goes upon the ground that we have stated, it is thrown in at the end as a make-weight that the order of the Commission calls upon the plaintiff "to submit a new schedule for transportation which may be operated at much less expense to it than

the former schedule cost, and at a profit for plaintiff." This is merely the language of hope. We cannot take it to be a finding of fact, for we perceive nothing in the evidence that would warrant such a finding. The assumption upon which the Court made its ruling was that the plaintiff's other business was successful enough to stand a loss on the road.

Finally a suggestion is made in argument that the decision rested also upon another ground that cannot be reconsidered here. At the end of the opinion it is stated that the plaintiff has not petitioned the Railroad Commission for leave to discontinue this business and that until it has done so the Courts are without jurisdiction of the matter. It is not impossible that this is an oversight since it seems unlikely that after the Commission has called the plaintiff before it on the question and against its strenuous objection has required it to go on, such an empty form can be required. But in any case it cannot be meant that the previous discussion which occupies the whole body of the opinion is superfluous and irrelevant to the result reached; nor can the words be taken literally, since the court proceeded to take jurisdiction and reinstated an injunction in favor of the defendant. Whatever may be the forms required by the local law it cannot give the Court or Commission power to do what the Constitution of the United States forbids, which is what the order and injunction attempt. *Pennsylvania R. R. Co.* v. *Public Service Commission,* 250 U. S. 566.

*Decree reversed.*