## NORTHERN PAC. RY. CO. v. BOARD OF RAILROAD COM'RS OF STATE OF MONTANA et al.

### No. 3071.

District Court, D. Montana, Billings Division.

Aug. 28, 1939.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., for plaintiff.

Harrison J. Freebourn, State Atty. Gen., and John W. Bonner, Asst. State Atty. Gen., for defendants.

Before HANEY, Circuit Judge, and BALDWIN and PRAY, District Judges.

PRAY, District Judge.

The principal question for determination in the above entitled cause is whether public convenience and necessity require the operation of passenger trains numbered 291 and 292 on the Northern Pacific Railway between Helena and Garrison, Montana, and involves the validity of an order of the Board of Railroad Commissioners of Montana denying the application of the plaintiff railway company for permission to discontinue said passenger trains. The validity of the order is challenged on the grounds that it deprives plaintiff of its property without due process of law and also that it imposes an undue burden upon interstate commerce.

On the other hand the defendants claim that the Board's order should not be set aside unless the evidence is clear and convincing that the order is unreasonable; that the public interest demands a continuance of this train service and that the expense of maintaining the trains is not so unreasonably out of proportion to the convenience of the public as to impose an unlawful burden upon plaintiff. It appears that the only places served by the trains in question and which are not served by the busses of the Northern Pacific Transport Company are those located along the line of railroad between Helena and Calcium, a point about 27 miles west of Helena; that the intervening territory is sparsely settled; that between these two places on the line of railroad, where above-mentioned trains stop for passengers, are Birdseye, Austin, Weed, Skyline, Blossburg and Rich Spur, and that Birdseye, Weed, Skyline, Rich Spur and Calcium are points where no agent or station is maintained, and that only railroad employees reside at any of these places, except Austin, which has a population of 16 people. The company maintains agents at Blossburg and Austin. Plaintiff asserts that if trains 291 and 292 are finally discontinued adequate passenger transportation will be afforded between

Helena and Calcium by transcontinental passenger trains numbered 3 and 4 which are now stopping on signal to receive and discharge passengers at Birdseye, Austin, Weed, Skyline, Blossburg, Rich Spur and Calcium and that such stops were not made prior to discontinuance of trains 291 and 292. That plaintiff has made arrangements with the Northern Pacific Transport Company to operate a truck in connection with its bus line between Helena and Garrison to carry the mail, heavy baggage, express and milk which were carried on trains 291 and 292.

Public convenience and necessity do not seem to require the operation of trains 291 and 292 between Elliston and Garrison; here Federal Aid Highway No. 10 runs near and parallel to this section of the railroad. Whether these trains should be continued between Helena and Elliston would depend upon whether public convenience and necessity so require.

Plaintiff submitted proof of the number of passengers carried and amount of revenue derived from the operation of these trains for a period of 163 days, from October 20th, 1936, to March 31st, 1937, showing an average daily cost of $49.69 and an average daily revenue of $13.01, and that the actual out-of-pocket loss for the 163 days was $5,928.84. Plaintiff shows that this amount does not represent the entire loss, as fixed and overhead expense, such as maintenance of tracks, stations and buildings, superintendence, clerical expense, equipment, depreciation, taxes and interest, are not included.

An interesting compilation of data appears in Exhibit "F", attached to the complaint and established by proof, showing that the average number of revenue passengers carried on train 291 during the test period of 163 days to Birdseye was one every 5.6 days, to Austin one every 3.7 days, to Skyline one every 10.2 days, to Blossburg one every 3.3 days, to Rich Spur one every 81.5 days, and to Calcium one every 12.5 days; and the average number of revenue passengers carried on train 291, during said test period, from Birdseye was one every 81.5 days, from Austin one every 32.6, from Blossburg one every 3.4 days, from Rich Spur one every 14.8 days, and that no passengers were carried during this period of 163 days from either Skyline or Calcium.

In respect to train 292 a similar state of facts is shown to exist during the test period, as follows: To Rich Spur one every 13.6 days, from there one every 163 days; to Blossburg one every 3 days, from there one ever 3.3 days; to Austin one every 40.8 days, from there one every 3.3 days; to Birdseye one every 32.6 days, from there one every 32.6 days; to Calcium none, from there one every 14.8 days; to Skyline none, from there one every 16.3 days, and no passengers were carried on either train during the test period to or from Weed. Other tests were made at later dates showing a similar condition in respect to passenger travel. It does not appear that residents of these different places can very well complain of inconvenience in the time of arrival and departure of transcontinental trains 3 and 4 now stopping on signal, although objection is made on this ground by defendants' witnesses. No. 3 leaves Helena at 6:33 A. M., arriving at Elliston at 7:56 A. M., and at Garrison at 8:35 A. M. Train No. 4 leaves Garrison at 8:40 A. M. and arrives at Helena at 10:35 A. M.

The financial condition of plaintiff is set forth in the complaint and supported by proof, and discloses a considerable loss in business. Worse in 1938 than in 1937. It seems to the court that the testimony of the defendants' witnesses as to convenience and necessity does not off-set the facts established by plaintiff showing how sparsely populated is the region from Helena to Garrison, and particularly to Elliston, and how little use was made of trains 291 and 292, and especially when considered in connection with the service provided by trains 3 and 4, and the busses and trucks now in operation. Both sides have cited Great Northern Railway Company v. Raymond T. Nagle, Attorney General et al., D.C., 16 F.Supp. 532, 537, wherein a statutory 3-Judge Court at Great Falls said: "But the question we are required to answer is: Does the public interest demand a continuance of the aforesaid trains?" That inquiry might properly be made in this case. An entirely different state of facts existed in respect to train service at Lewistown and Sweet Grass in the Great Northern case than is found in this case. At Sweet Grass there would have been no train service at all, with some of the places on the line not served by busses, and at Lewistown an inadequate service—unreliable as to time, with towns in populous farming communities left with insufficient or no bus service at all, if the

court had discontinued the Lewistown and Sweet Grass trains.

Having considered the evidence, the arguments of counsel for the respective parties and authorities relied upon, this court is now of the opinion that the plaintiff should prevail in said cause, and that a decree should be entered herein granting plaintiff a permanent injunction, as prayed for in the complaint and such is the order of the court.

Brief findings of ultimate facts, and conclusions of law, may be submitted, to conform to the rule and the foregoing opinion.