## NORTHERN PAC. RY. CO. v. BOARD OF RAILROAD COM'RS OF STATE OF MONTANA et al.

### No. 293.

District Court, D. Montana.

July 31, 1942.

Coleman, Jameson & Lamey, of Billings, Mont., Corette & Corette, of Butte, Mont., Hubert A. Simmons, of Red Lodge, Mont., for plaintiff.

John W. Bonner, Atty. Gen., of Montana, E. K. Matson, of Helena, Mont., and Phil G. Greenan, of Great Falls, Mont., for defendants.

Before HANEY, Circuit Judge, and PRAY and BALDWIN, District Judges.

PER CURIAM.

Plaintiff herein seeks to enjoin the Board of Railroad Commissioners of the State of Montana from enforcing its order requiring the plaintiff railroad company to continue the operation of its certain passenger trains, numbered 205 and 206 running between the cities of Billings and Red Lodge, Montana. The trains in question carry passengers, mail, express and baggage a distance of 59 miles between the two cities named, traveling fifteen miles west of Laurel over the main line of plaintiff's railroad, and thence branching off in a south westerly direction and passing through the small towns known as Mason, Silesia, Rockvale, Montaqua, Joliet, Boyd, Selmes, Roberts and Fox. The branch line terminates at Red Lodge. The train leaves Billings at 7:15 A. M. and returns at 8 P. M.

A passenger bus line, known as the Northern Pacific Transport Company, owned by plaintiff, is operated daily over a hard surfaced highway, paralleling the railroad, between Billings and Red Lodge, and serving all of the towns above mentioned, which are likewise served by the trains. The bus leaves Billings at 7:30 A. M. and returns at 6:15 P. M. Trucks carrying freight are also operated over the same highway in connection with the bus line, and, in addition thereto, a tri-weekly freight train is in operation by plaintiff between the two cities above named. The highway in question continues on through Red Lodge over the Cooke City highway and comprises one of the entrances to Yellowstone National Park, over which the plaintiff operates buses for the accommodation of tourists during the park season, to connect with the park transportation company.

The plaintiff claims that although large sums of money were expended in extensively advertising this scenic entrance to the park that it has suffered a great loss in revenue from the operation of its branch line trains, amounting to $12,770.27 for a year, or an average loss of $1,000 per month, and that the total revenue for passengers, mail, milk and express was not sufficient to pay the wages of the train crew. In taking account of the losses above described plaintiff states there was not included expenses of care and upkeep of buildings, tracks, road bed, general overhead, depreciation and amount paid as damages for injuries to persons and property. The average number of passengers carried per trip in 1921 was 81, and in 1941, 9: and the average passenger revenue per trip in 1921 was $88.63, while in 1941 it was $7.75. There appears to be no dispute in respect to the foregoing facts.

The principal question here is whether public convenience and necessity require the continued operation of trains numbered 205 and 206 between Billings and Red Lodge. Testimony was taken before the Court on the merits and as on final hearing for a permanent injunction, and thereafter a Master pro hac vice was appointed to take further testimony in the locality affected by the proposed curtailment of passenger train service, with instruction to report to the Court the evidence so received. The continuing losses in patronage over a considerable period of time, such as a decrease in average number of passengers per trip of eighty-one to nine, would afford a strong indication that public convenience and necessity did not require further operation of these trains. Plaintiffs assert that at the hearings before the defendant Board there were no protests from Billings or from any town between Billings and Red Lodge served by the trains. Without going into detail, it clearly appears to the Court from a perusal of the transcripts in evidence that there is a decided lack of interest on the part of the public generally in the maintenance of such train service, and that is further evidenced by the fact established by plaintiff that very few people living along the main and branch lines in question ever travel on these trains. What the Court said in respect to monopolization of the highways by different kinds of motor driven vehicles in a similar case where like issues were involved would seem to apply here. Great Northern Ry. Co. v. Nagle et al., D.C., 16 F.Supp. 532, 535.

The loss incurred by plaintiff through maintenance of train service is urged as a reason for discontinuance, but

defendants contend that plaintiff may not discontinue a minor portion of service when public convenience and necessity demands that service, because of loss in operation, unless it is shown that the entire system is materially affected by such loss, citing authorities to sustain their position. They might have cited the Nagle case above for this Court made a similar statement in that decision. Citing Missouri Pacific Ry. Co. v. State of Kansas, 216 U.S. 262, 30 S.Ct. 330, 54 L.Ed. 472, relied upon by defendants, as analyzed in the Brooks-Scanlon Co. v. Railroad Comm. case, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323. The difficulty with the applicability of that argument is that in the present case the residents of the locality traversed by the trains have clearly shown that they do not care for the service by failure to give it patronage. The theory of the defense in respect to the application of an agreement between the defendant Board and the plaintiff for continued train service at the time licenses were issued for the operation of the transport company has been considered and does not seem to present a very serious question. Similar issues are discussed in the Nagle case, supra, as well as in authorities cited and, in the opinion of the Court, such a contention should not be approved under the law and circumstances found here. Brooks-Scanlon Co. v. Railroad Commission, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323; State of Texas v. Eastern Texas R. R. Co., D.C., 283 F. 584, 593; City of Billings v. Public Service Commission, 67 Mont. 29, 39, 214 P. 608; Mississippi Railroad Commission et al. v. Mobile & Ohio Railroad Company, 244 U. S. 388, 37 S.Ct. 602, 61 L.Ed. 1216.

Defendants have indulged to some extent in speculative considerations in the search for reasons why the rail service should continue, such as the replacement of new equipment for old, the future development of chrome mining and other industries, the rationing of gasoline and rubber, reducing the present extensive use of motor vehicles; these and other reasons are given as an inducement to uphold the Board's ruling. It was further suggested that a better train and faster schedule would increase travel. In reply to these arguments plaintiff submits that war conditions have made more immediate demands for railway equipment and man power, and that this is no time for the operations of trains on a branch line which are unused by the public and consequently operated at a loss, and at a time when the office of Defense Transportation is calling upon all railroads to eliminate unnecessary trains and operations wherever possible. Although these latter arguments raise relevant questions for consideration, there still remains the principal determinative issue of public convenience and necessity which in the Court's opinion has not been established, and in respect to that issue the ruling of the defendant Board now under consideration would seem to have been unwarranted and unreasonable.

The issues raised here appear to have been fairly considered in authorities cited by counsel and in decisions of three-Judge Courts in this district where like questions were involved. Northern Pacific Ry. Co. v. Board of Railroad Commissioners, D. C., 28 F.Supp. 810; Great Northern Ry. Co. v. Nagle, D.C., 16 F.Supp. 532, and the final decision in the latter case, D.C., 28 F.Supp. 812, and the authorities relied upon in both cases. In the opinion of the Court the communities served by trains numbered 205 and 206 will be adequately served by the buses and trucks that are in operation over the highway paralleling the railroad the entire distance from Billings to Red Lodge and by the tri-weekly freight trains, supplemented by the extensive operation of mercantile deliveries from Billings and by privately owned automobiles.

The Court therefore concludes that the material allegations of the complaint have been sustained by competent proof and that the injunction should issue as prayed for, and it is so ordered. Appropriate findings and conclusions and form of Judgment may be submitted.