## CHICAGO, B. & Q. R. CO. v. BOARD OF RAILROAD COM'RS OF MONTANA et al.

No. 845.

District Court, D. Montana, Billings Division.

Nov. 19, 1947.

BROWN, District Judge, dissenting.

———◆———

T. B. Weir, W. L. Clift, E. K. Matson and Newel Gough, all of Helena, Mont., and J. L. Rice, of Denver, Colo., for plaintiff.

R. V. Bottomley, Atty. Gen., Alfred F. Dougherty, Asst. Atty. Gen., and Edwin S. Booth, of Helena, Mont., for Board of Railroad Com'rs.

Melvin N. Hoiness, County Atty., of Billings, Mont., Bert W. Kronmiller, County Atty., of Hardin, Mont., and Phil Greenan, of Great Falls, Mont., for defendants.

Before BONE, Circuit Judge, and PRAY and BROWN, District Judges.

PRAY, District Judge.

This is an action by plaintiff to restrain the defendant, Board of Railroad Commissioners of Montana (hereinafter referred to as the Board), from enforcing an order which would require the plaintiff to restore to service, between Wyola and Billings, Montana, two passenger trains, No. 41 and No. 44, which were ordered discontinued by the Office of Defense Transportation in 1942, and which order was withdrawn in 1945. After a hearing and rehearing, the said Board on June 24, 1946, ordered the plaintiff to restore the two passenger trains to service between the two places above named.

Plaintiff alleges that the order of the Board is without fact basis to support it, is unjust, is confiscatory, and is in effect a taking of plaintiff's property for public purposes, without just compensation and without due process of law, and is therefore a matter for judicial review, and comes within the jurisdiction of a Three Judge Court. The defendant Board denies these allegations and alleges that the order directing the plaintiff to restore service of trains Nos. 41 and 44 between Billings and Wyola is reasonable and just and is issued pursuant to the duty and authority vested in the said Board by the laws of Montana.

Under the evidence submitted it becomes the duty of the Court to determine therefrom whether public convenience and necessity would require the restoration of the train service in question in compliance with the order of the Board. In this case we have the same problems to consider that have heretofore been presented to Three Judge Courts in Montana, as indicated by the citations of counsel in the briefs. The buses and automobiles are again in evidence as important factors in disuse by the public of passenger train service—especially local service. Outside of Billings, the terminal point, the towns are for the most part small in size and some distance apart on the one hundred and four miles of railroad now used by passenger trains Nos. 42 and 43, and heretofore used by trains Nos. 41 and 44; according to the evidence there are fifteen places in all and five of these are railroad sidetracks; the only towns of any size are Wyola, 129; Lodge Grass, 839; Crow Agency, 800; Hardin, 2300; Ballantine, 176; and Huntley, 193; of the 32 residents of Toluca and Ionia nearly all are railroad employees; of the two places remaining out of the fifteen, Garryowen has 18, and Corinth, 13; the latter is said to be the only place on the railroad containing any population at all which does not have direct highway and bus service.

The evidence discloses that the Northland Greyhound Bus Line operates four buses daily in each direction between Billings, Huntley and Worden, and that the Burlington Transportation Company operates three buses daily each way between Billings, Hardin, Crow Agency, Garryowen, Lodge Grass and Wyola.

It also appears from the evidence that two first-class all-weather, all-year highways serve the territory involved; one is U. S. Highway 87, passing through Wyola, Lodge Grass, Garryowen, Crow Agency, Hardin and Billings. The second is U. S. Highway 10-12 which passes through Billings, Huntley and Worden (1.8 miles from Ballantine by graveled highway).

Statistics are in evidence disclosing the extent of patronage on the two passenger trains now in operation, Nos. 42 and 43, between Billings and Wyola, from April 1, 1946 to March 31, 1947, and showing on and off passengers daily eastbound as 8.95, and the same westbound as 5.78; a further analysis of these figures is given presenting even more plainly that few people

take advantage of the train service now in operation.

Defendants seem to attribute the lack of patronage to some extent to an inconvenient time table. Counsel for plaintiff claim it is demonstrated that even when four passenger trains were running between Wyola and Billings in 1940 and 1941, there was not much difference in the total number of local Montana passengers carried, and offer the following calculation taken from the figures of Mr. Lavidge, General Auditor of plaintiff; in 1940, Nos. 42 and 44 combined, eastbound, 6.08, and westbound Nos. 41 and 43 combined, 7.14; and in 1941, Nos. 42 and 44 combined, eastbound, 5.47, and westbound, Nos. 41 and 43 combined, 5.57. These are said to be the total number of local passengers traveling daily, on the average, on the four trains numbered 41, 42, 43, and 44. Counsel, therefore, contend that the restoration of the train service ordered by the Board will not increase local train travel to any material extent.

The Court's attention is next directed to the amount of revenue produced by trains Nos. 42 and 43, and likewise to the cost of operation, the figures being taken from the calculations of Messrs. Lavidge and Whitehead, the latter being Manager of mail, baggage and express traffic, from which it appears that the total earnings for local Montana traffic for these two trains from April 1, 1946 to March 31, 1947 were $6,254.12. Thus, plaintiff contends that if the restored trains took care of all the present local service, passengers, express, cream and milk, their approximate earnings would be $6,254.12 annually; but according to Mr. Whitehead, if the federal government should decide to use the trains to carry local mail seven days a week, which he considered doubtful, then the earnings would be increased by $3,416.40 per annum, which added to the above sum would make the total annual earnings $9,-670.52.

The expense account for the operation of these trains is figured as follows: For a small steam train about $7,074 a month, or $84,888 a year; for a gasoline motor car the expense would be $3,513 a month, or $42,156 a year; therefore plaintiff claims a loss of approximately $32,485.48 per year, even though operations were carried on under the most favorable conditions. It is further asserted that Montana earnings on interstate trains, Nos. 42 and 43, would be cut down accordingly; that these trains are now being run at an expense to plaintiff of $119,413 per year, chargeable to the Montana operation alone; these items of expense were also prepared by Mr. Lavidge on April 15th, 1947. He further stated that such operating costs take no account of overhead for maintenance of roadbed, track and structures, or station operation, train dispatching, supervision, claims, insurance, yard switching, depreciation or interest. The revenues received and costs set forth were compiled by officials or employees charged with the duty of keeping accurate account of income and outlay, and have not been shown to be either inaccurate or overdrawn; in fact it might be difficult for the Board successfully to challenge the accuracy of statements made by experienced railway officials or employees in respect to income and outlay in the operation of their passenger trains. If these statistics on expense are accepted as reliable and approximately correct, then, under the authorities, they may be considered as having some bearing on the reasonableness of the Board's order, taking into account the present facilities of train and bus service, and the increasing use of private conveyances, and further, considering the lack of passenger train patronage which has been shown to exist over considerable periods of time.

The Court has considered the controversy between counsel as to the relevancy of the Board's order of 1942, and the arguments of counsel on the subject, and concludes that the present cause is based upon the issues raised by the pleadings, which follow the order to show cause by the Board heard in 1945, and the subsequent action of the Board in June, 1946, ordering trains Nos. 41 and 44 restored to service; since the final order of the Board this case has been pending on application by plaintiff for preliminary injunction, counsel having agreed that the temporary restraining order might be continued in

force until hearing and decision on the motion.

The principal question to be determined here, as in all the other Three Judge Court cases from Montana, cited by counsel, is, whether public convenience and necessity require the operation of trains Nos. 41 and 44 between Billings and Wyola, Montana. After a consideration of all the evidence, especially the meager patronage as disclosed by the statistics presented, the losses sustained by the company in the operation of these trains, the conveniences afforded the public in the operation of the buses, trucks, the present train service, the ever increasing use by the public of private automobiles, and the statements of inhabitants of the territory in question, it would seem in view of all the precedents heretofore established by Three Judge Courts in Montana, some of them cited and relied upon by counsel for the respective parties, that the Court should also have recourse to them as a useful aid in its endeavor to arrive at a just decision of the present controversy. In all these cases the lack of patronage of railroad passenger service, the expense of maintenance in some of them apparently unnecessarily imposed upon the railroad, the other conveniences available to the public in train, bus, truck, and other services, were found to be the principal issues involved, from a consideration of which the Court was required to determine whether public convenience and necessity demanded further train service, and whether the order of the Board restoring such service should be considered arbitrary and unreasonable. Disuse by the public of the service provided in the present case is not unlike the fact situation presented in the other Montana cases wherein many authorities were cited to sustain the decisions reached by the Court. Great Northern Ry. Co. v. Nagle, D.C., 16 F.Supp. 532; Northern Pacific Ry. Co. v. Board of Railroad Commissioners of Montana, D.C., 28 F.Supp. 810; Great Northern Ry. Co. v. Nagle, D.C., 28 F.Supp. 812; Northern Pacific Ry. Co. v. Board of Railroad Commissioners of Montana, D.C., 46 F.Supp. 340; Mississippi Railroad Commission v. Mobile & Ohio Railroad Co., 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216; Brooks-Scanlon Co. v. Railroad Comm., 251 U.S. 396, 40 S.Ct 183, 64 L.Ed. 323; Northern Pac. Ry. Co. v. North Dakota, 236 U.S. 585, 595, 599, 600, 604, 35 S.Ct. 429, 59 L.Ed. 735, L.R.A. 1917F, 1148, Ann.Cas.1916A, 1; Norfolk & Western R. Co. v. Conley, 236 U.S. 605, 609, 614, 35 S.Ct. 437, 59 L.Ed. 745; Delaware, L. & W. R. Co. v. Van Santwood, D.C., 216 F. 252, 255; also Delaware, L. & W. R. Co. v. Van Santwood, D.C., 232 F. 978.

The Board's quotation from one of the Montana cases is appropriate here, and reads as follows: "Great loss is claimed by plaintiff in maintaining a service the public does not use, resulting in an unreasonable burden on interstate commerce. Some of the witnesses for defendants assert that this loss is considerably exaggerated. However, it is apparent to the Court that there is a substantial loss in maintaining this service. No doubt the State can require the carriers to furnish reasonable and adequate facilities to serve not only the local necessities but the local convenience, and may require additional service in a proper case, but on the other hand the property of the railway is entitled to full protection and cannot be taken without just compensation or without due process of law." Great Northern Railway Co. v. Nagle, D.C., 28 F.Supp. 812, 813. Defendant Board contends that whether the operation in question is carried on at a profit or loss, the entire business of the company should be taken into consideration; that "where the company continues in business, it may be required to carry on part of the business even at a loss, if that part of the business is convenient or necessary to the public." Since it plainly appears that public convenience and necessity do not require the operation of the two additional trains, evidence of the earnings and losses of plaintiff over its entire system would not seem to be material. Northern Pac. Ry. Co. v. Board of Railroad Commissioners of Montana, D.C., 46 F.Supp. 340, 341, 342.

Having weighed the proof and carefully considered arguments of counsel and authorities in point, the Court is now of the

opinion that plaintiff has sustained the material allegations of the complaint and is therefore entitled to the issuance of an injunction as prayed for, and such is the order and judgment of the Court herein. Appropriate findings of fact and conclusions of law may be submitted under the rule, also form of judgment. Exceptions are allowed counsel.

BROWN, District Judge (dissenting).

The defendant Board of Railroad Commissioners is created by statute, Section 3779, Rev.Codes Mont.1935.

Its powers and duties are provided by statute, among them being Section 3801, R.C.M.1935, which provides: "Power to compel railroad companies to provide adequate accommodations and service. The board shall have the power, and it shall be its duty, to compel any and all railroads subject hereto, to provide, maintain, and operate sufficient train service, both freight and passenger, for the proper and reasonable accommodation of the public, and to provide and maintain suitable waiting-rooms for passengers, and suitable rooms for freight and baggage at all stations." In the exercise of its statutory duty the Board made the order complained of by plaintiff.

The plaintiff has the burden upon it to establish not merely that the Board committed error in some respect but that its order complained of was so arbitrary and unreasonable and in excess of the lawful powers of the Board as to deprive the Railroad Company of its property without due process of law, forbidden by the Fourteenth Amendment to the Constitution of the United States. Mississippi Railroad Commission, et al., v. Mobile & Ohio Railroad Company, 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216. To sustain its burden the proof must be convincing. Railroad Commission of California et al., v. Pacific Gas & Electric Company, 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319.

Except for portions of testimony of individuals found in depositions taken by the defendants and filed in the case that plaintiff offered in evidence, plaintiff relied entirely in this proceeding upon affidavits filed by its employees, its officers and attorneys. The principal affidavits it relies upon are those of L. M. Whitehead, an employee of the company in its Baggage, Express and Mail Department and its Manager of its Mail, Baggage and Express Traffic, and A. W. Lavidge, its auditor. The affidavits purport to set out the revenue derived by the company in its intrastate business in Montana from the operations of trains No. 42 and 43 and the expense of that operation. Plaintiff's contentions are—1. That to obey the order of the Board would require it to expend a great deal more money in the operation of the two trains ordered operated than it would receive from revenues derived from patronage of the trains; 2. that its trains would receive little patronage because of the fact that adequate bus transportation has been provided which would be more readily patronized by the residents of the area than the proposed train service; and 3. the residents of the area use their private automobiles for making trips to such an extent that the train and other methods of public transportation are not used.

As set out in plaintiff's reply brief the distance between Billings, the western terminal of the plaintiff, and Wyola, the most easterly station in Montana, is 104 miles and the population in the cities and towns to be served by the trains is 34,500, no compilation having been made of the additional number of people who live outside of those cities and towns in the area and who have occasion to go from place to place. Billings is the county seat of Yellowstone County and Hardin is the county seat of Big Horn County. Billings is the largest city in the State of Montana in that area and is the shopping and business center for the entire area. It is thus apparent that the order of the Board dealt with the question of the convenience and necessity of approximately 35,000 people along the line of plaintiff's railroad, 104 miles in length.

Plaintiff's contention that there is an adequate bus schedule requires an examination of the evidence in that regard. The Greyhound Bus Company operates four buses east and four buses west each day

between Billings and Ballantine or Worden, a distance of 21 miles. These two towns have a total population of 369 persons. As the population of all towns served by the plaintiff between Billings and Wyola is 4500, excluding the population of Billings, the Greyhound Bus Company serves out ·of that total only 369, leaving a population of 4131 in the other towns not served by that bus line, thus the bus line furnishes no transportation to the residents of Billings who desire to go south of Worden or Ballantine, or to the people residing south who desire to go north to Hardin or to Billings, and thus of necessity the bus service furnished by the Greyhound Bus Company plays little part in the question presented. Any resident of the area going to Hardin, the county seat of Big Horn County, could not do so by using the Greyhound Bus Company's buses.

The Burlington Transportation Company operates bus schedules between Billings and Wyola, operating three buses each day west and three buses east. One bus leaves Wyloa at 1:53 A. M. going through the intermediate stations and arriving in Billings at 4:15 A. M., another bus leaves Wyola at 9:36 A. M. arriving in Billings at 12:05 P. M., another bus leaves Wyola at 6:39 P. M., arriving in Billings at 9:10 P. M. Eastbound, the bus company's first bus leaves Billings at 5:15 A. M., arriving in Wyola at 7:37 A. M., the next bus leaves Billings at 12:01 P. M. arriving in Wyola at 2:23 P. M. and the next bus leaves Billings at 6:15 P. M. arriving in Wyola at 8:44 P. M. None of these buses pass through Ballantine or Corinth, were 189 people reside. The railroad does. There was no evidence presented by plaintiff that there was any extensive intrastate traffic between Wyola and Billings and at intermediate points between the hours of 1:53 and 4:15 in the morning, and any such traffic between Billings and Wyola between the hours of 5:15 and 7:37 in the morning, or that the schedule was adopted for the purpose of providing for the local necessity or convenience of the people in the area. The bus is an interstate bus and unquestionably its schedule through those points in Montana was fixed with regard to the necessity and convenience of the interstate and not the intrastate traffic. Mr. T. Z. Remmele, Vice President of the Chamber of Commerce at Hardin, testified in response to the question as to whether he was generally familiar with the bus service between Hardin and Billings as follows: "Well, that is just one service. It is the one that leaves between,—leaves at 10:45, and one comes back at seven in the evening. That is about the only one you can make connection with, because that gets you up there for afternoon shopping and brings you back for the evening." He further testified: "Q. You do know what other bus services are? A. Yes, sir, there is other bus services. Q. What you intended to say is that that is the only one that actually furnishes a convenience. A. That is the one we always use." It seems to me that the Board could well have found from this evidence, in no wise contradicted or disputed by the plaintiff, that of the three bus schedules in operation there was only one provided with a view to the necessity and convenience of the 34,000 people, residents in the cities and towns along the route.

Plaintiff contends that the tendency to the use of private automobiles is such that the residents of the area use them in preference to train or bus service. No evidence was introduced by the plaintiff to support this contention. In view of the fact that beginning early in the year 1942, and as a war measure, the manufacture of automobiles was prohibited by the government for general civilian use, that tires and tubes were available only in limited quantities and under a severe rationing schedule to civilians and such condition continued until the time of the making of the order, complained of, by the Board, it would seem that the contention was not susceptible of being sustained by proof, and that because of the condition with reference to automobiles, the tendency was for those who had previously used their automobiles for their private transportation to cease that use and use the trains and buses in ever increasing numbers. Plaintiff submitted no evidence that since the order of the Board the manufacture of automobiles, tires and tubes has been at such a rate as to change the condition in

any material respect. The evidence in the record on that point is from Mr. Clifford, County Commissioner of Big Horn County as follows: "Q. What is the condition as to the operation of private automobiles? A. Well, of course, there isn't very many. Everybody don't have an automobile now that they would have in normal times, you know. Q. Why is that? A. Curtailment of production, where they don't have enough automobiles." This testimony is not contradicted, refuted or impeached in any way by the plaintiff and is sufficient to establish the fact contrary to the plaintiff's contention in that regard.

Plaintiff contends that in addition to this bus service it provides adequate train service for the necessity and convenience of the residents of the area through its operation of one train a day each way between Wyola and Billings and Billings and Wyola. The trains it operates are interstate trains operating between Lincoln, Nebraska and Billings, Montana. Train No. 42, eastbound, leaves Billings at 9:45 A. M. and passing through intermediate stations arrives in Wyola at 12:24 P. M., and train No. 43 westbound, leaves Wyola at 6:45 P. M. proceeding through the intermediate stations and arrives in Billings at 9:35 P. M. It does not appear from the schedule fixed that the operation of either of the trains on that schedule was done with any consideration in mind for the convenience and necessity of the residents in the area. However, there is positive testimony in the record on the question as to whether or not the operation of the trains on those schedules tends to serve public necessity and convenience of the people in the area. H. E. Clifford, a resident of Crow Agency and County Commissioner of Big Horn County, testified: "* * * I don't go on the train to Billings because you can't get on it hardly; no depot man; depot is locked, and the bus goes about the same time, so if I am going to go up in the evening I take the bus. Q. The bus is a little more convenient, even for an evening trip, for you than the train? A. Yes. You couldn't get on the train. Train stops, but you have no idea when it is coming. Just have to stand out in the open. Depot is locked." Crow Agency has a population of 800. It is the center for the administration of the affairs of the Crow Indian Reservation by the United States, with the government personnel necessary for such administration stationed there. From this evidence it appears that the plaintiff did nothing to encourage local traffic on its trains or that it was interested in obtaining local patronage when it furnished the people of the area no information as to the time of the arrival of the trains, closed its depot and provided no facilities for providing transportation or otherwise getting on the train when it did stop. The evidence further discloses that for one in the area desiring to go to Billings to shop, if such one went by train, he would be compelled to spend two nights in Billings to shop or transact any other business during one day. One desiring to go to Hardin to transact business would be required to stay over night. Mr. Clifford further testified that the proposed schedules for operating trains No. 41 and 44 would afford a convenient time for travelers to arrive; they would be a benefit to everybody having business going either way; in his opinion the people would use the trains operated on such a schedule in preference to buses as the accommodations on the train are better. On this schedule, those living in Wyola or in intermediate points, desiring to transact business in Billings could do so and return home the same day. From this evidence, to me the Board could well hold that the operation of the two trains, being operated now, played no part in the caring for the necessity and convenience of the residents in the area needing transportation.

Plaintiff contends that in order to comply with the order of the Board, and run the two trains ordered to be run, it would cost it $84,888.00 to operate a passenger train with a small steam locomotive equipment for a year, and with gas-electric motive power and one combination unit it would be $42,156.00 per year. The plaintiff, under the order of the Board, could operate either unit at its election. The basis of plaintiff's contention in that regard is the affidavit of Lavidge, where he says in Paragraph 10 of his affidavit filed

August 23, 1946, "Affiant, as a result of his long experience in keeping the accounts of the Chicago, Burlington & Quincy Railroad Company with respect, among other things, to its train operations and cost thereof, has become well acquainted with the cost of operating railroad passenger trains and can estimate and state with reasonable certainty and close proximity the cost of operating passenger trains on the line of said company between Billings and Wyola, Montana. Based upon a train consisting of a steam locomotive of class S-1-A (which is the smallest available locomotive owned by said company) and one baggage car and one passenger coach, the out-of-pocket cost per month of operating such train between Billings and Wyola, Montana, daily in each direction * * * will be as follows:" and here he sets out his estimate of the monthly cost as $7,074.-00, "and the annual cost thereof will be $84,888.00." It is thus apparent that this figure as to cost is not based upon any record kept by the plaintiff of the actual operation of any train. The entire foundation for plaintiff's assertion as to cost is the estimate or guess of its auditor. To me the estimate or guess of an auditor as to the cost of operating a passenger train does not rise to the dignity of proof sufficient to establish that the Board in making its order was so arbitrary and unreasonable and so far exceeded its lawful power as to violate the Fourteenth Amendment to the Constitution. Mr. Lavidge further asserts that the earnings of the trains, if operated, would be $6,254.12 and Mr. Whitehead, in his affidavit, says that if the United States would use the train to carry the mails those earnings would be increased by $3,416.40 per annum. Mr. Lavidge recites the sum of $6,254.12 as being the actual earnings for the year of trains No. 42 and 43, now operating, from all intrastate patronage, passengers, express, etc., between Wyola and Billings, and estimates the other trains would not earn more. Suffice it to say on that point, that it does not appear that the earnings or revenue of a train, from intrastate traffic, operated without regard to public convenience and necessity and on a schedule that discourages use by intrastate passengers rather than encourages it, is any fair basis or criterion on which to es-

timate the revenue that would be derived by the plaintiff from the operation of a train in intrastate traffic that would serve the public convenience and necessity of the people within the area. Plaintiff submitted the affidavit of its general auditor of passengers carried by trains No. 41 and 44 during the year 1940 (the trains ordered operated by the Board). However, the Board in 1942 found that public necessity and convenience required the continued operation of these trains and its order was acquiesced in by the plaintiff. To me the statement in the affidavit is of no probative value in view of the order of the Board, for I must assume that these were facts submitted to the Board at the hearing prior to making the order and the Board, in considering those facts along with all the other facts before it, found that public necessity and convenience still required the operation of the trains and so made its order in which plaintiff acquiesced. The order of the Board denying the petition of the railroad company to discontinue operations of trains No. 41 and 44 is dated the 30th of June, 1942. The plaintiff operated the trains under the order of the Board from that date until December 3, 1942, when they were discontinued by reason of the order of the Office of Defense Transportation. The plaintiff did not submit any affidavit of its auditor or any evidence of the number of the passengers carried or the revenue derived by it through its operations of trains during that last mentioned period, but preferred to rest on that point upon the affidavit of its auditor as to the passengers carried in 1940. It would appear that evidence of the number of passengers carried and revenue derived between June 30, 1942 and December 3, 1942, was the best and most satisfactory evidence on that question. However, plaintiff chose not to offer such evidence, but for some reason to submit the evidence as to passengers carried in 1940.

Plaintiff contends strenuously that it is now operating trains No. 42 and 43 at a loss in excess of $100,000.00 a year. The contention is based upon the affidavit of its auditor Lavidge, where he recites in Paragraph 11 of the affidavit, filed April 25, 1947, that the out-of-pocket cost for oper-

ating train No. 42 for the year was $59,-750.00 and train No. 43—$59,663.00, or a total of $119,413.00, chargeable to the Montana operations alone between Billings and Wyola, and that the total earnings for local Montana traffic for the two trains was $6,254.12, thus entailing a loss in its train operations in Montana of $113,158.-88. However, there is no support in the record for any such contention. In fact it cannot be ascertained from the evidence whether or not the two trains operated in Montana at a profit or a loss and if so what the amount of the profit or the loss was. Assuming as true the assertion that the expense of operating the trains in Montana is $119,413.00 as set out in the affidavit, the trains so operated were interstate trains. Whether they were operated at a profit or loss cannot be known unless the total earnings of the trains on interstate and intrastate business within Montana are set out. Plaintiff could not well contend that it transported interstate passengers from Wyola to Billings and Billings to Wyola for no compensation, or that it transported interstate express and mail between those two points without compensation, and plaintiff, in submitting its figures only of revenue derived by the trains from intrastate operations, does not establish the fact that the trains, considering their entire revenue from all business done in Montana, are not operating at a profit.

The Supreme Court said in Mississippi Railroad Commission et al. v. Mobile & Ohio Railroad Company, supra [244 U.S. 388, 37 S.Ct. 603]: "Whether a statute enacted by the legislature of a state, or an order passed by a railroad commission, exceeds the bounds which the law thus sets to such authority, is a question of law arising on the facts of each case * * *."

The principles of law that control our actions here have been long settled by the decisions of this court in Great Northern Railway Company v. Nagle, D.C., 16 F. Supp. 532; Northern Pacific Railway Company v. Board of Railroad Commissioners of the State of Montana, D.C., 28 F.Supp. 810; Great Northern Railway Company v. Nagle, D.C., 28 F.Supp. 812; Northern Pacific Railway Company v. Board of Railroad Commissioners, of the State of Montana, D.C., 46 F.Supp. 340. It thus becomes necessary to examine the facts in those cases to which the principles of law announced were applied in order to determine if there is such an identity of fact situation as would require us to grant the plaintiff the relief it prays for.

In Great Northern Railway Company v. Nagle, Attorney General, D.C., 16 F.Supp. 532, the Court set aside the order of the Board requiring the plaintiff there to operate two passenger trains between Great Falls and Butte, a distance of 170 miles, and refused to disturb the order of the Board requiring passenger trains between Great Falls and Lewistown, and Shelby and Sweetgrass to be operated. The facts in that case were that the plaintiff operated one train each way a day between Great Falls and Butte; that between Great Falls and Butte two bus lines operated six schedules each way daily, an adequate bus service. Plaintiff then established that the average number of passengers carried for a seven months' period, beginning January 1, 1935, by the two trains it desired to be discontinued was 44, or 22 per train; that the total revenue for the two trains was $25,895.00 and the actual (not estimated) cost of operating the two trains was $41,111.00 and the indirect costs, if added, would disclose a loss of $57,050.00. Plaintiff's total income from all sources during the years 1932, 1933 and 1934 so diminished that it was unable to meet its expenses, including interest and fixed charges, by $13,405.00 in 1932, $3,186,000 in 1933 and $1,074,000 in 1934. Plaintiff's total system revenue from passenger fares in 1925 was $13,955,000, that a steady decrease was shown each year to 1934 of $4,220,000, or a decrease of 70%. The total revenue from passenger fares in Montana decreased $3,272,000 in 1925 to $1,-202,000 in 1934, or 63%, and that includes both intrastate and interstate business. The total revenue passengers on plaintiff's system decreased from 3,642,749 in 1925 to 1,244,819 in 1934 or 65%, and the decrease in Montana has been from 760,886 in 1925 to 340,149 in 1934 or 55% and on the system there has been a decrease in the total revenue of passenger trains from 1925 to 1934 of 60%, and a like decrease in Montana of 53%, and in 1934 the loss from operation of its passenger trains on

the entire system of $4,336,000, and the loss in Montana for that year was $908,000. There are no comparable facts in the case before us. In place of two bus lines operating daily with six trips each way, the evidence discloses here that the only effective transportation is one bus trip each way a day. There is no evidence that the plaintiff operated at any loss over its entire system or that it operated at a loss in Montana. There is no evidence that since 1942 its passenger traffic has decreased rather than increased or its revenue from passengers has decreased rather than increased. This evidence was all available to the plaintiff, but it made no effort whatsoever to establish the fact, and it was only on proof of those facts, absent here, the Court held the order of the Board void. In Northern Pacific Railway Company v. Board of Railroad Commissioners of the State of Montana, D.C., 28 F.Supp. 810, the Board denied the petition of the plaintiff to be permitted to take off one train between Helena and Garrison. The Court set aside the order of the Board upon the following facts it found to be established; that if the plaintiff were to be permitted to discontinue two of its trains it would still operate one train; plaintiff proved that passengers carried and revenue derrived from the operation of the trains for a period of 163 days from October 20, 1936 to March 31, 1937, showing an average daily cost of $49.69, the average daily revenue of $13.01 and the actual out-of-pocket loss of $5,928.84; the buses of the Northern Pacific Transport Company paralleled the area and provided service; the financial condition of the plaintiff was established by the evidence and disclosed considerable loss in business, worse in 1938 than in 1937; that the area was sparsely populated and that only railroad employees resided in the small towns along the area, except Austin, which had a population of 16 people.

In Northern Pacific Railway Company v. Board of Railroad Commissioners of the State of Montana, D.C., 46 F.Supp. 340, the Court set aside an order of the Board requiring the plaintiff to operate a train each way, a distance of 59 miles, between Billings and Red Lodge, Montana. They found the fact to be that a passenger bus line, owned by the plaintiff, was operated over a hard surfaced highway parallel to the railroad between Billings and Red Lodge and serving all the intervening towns. Plaintiff established that it suffered a loss in revenue from the operation of its branch line amounting to $12,770.27 a year. The total revenue for passengers, mail, milk and express was not sufficient to pay the wages of the train crew. The average number of passengers carried per trip in 1921 was 81 and in 1941 was 9; the average passenger revenue in 1921 per trip was $88.63, while in 1941 it was $7.75. No such evidence was introduced here by the plaintiff; no evidence whatsoever of any loss of revenue or any decrease in the number of passengers carried.

The record here discloses that plaintiff had operated two trains a day each way for some years. In April, 1942, plaintiff filed its petition with the defendant Board asking authority to discontinue its passenger trains No. 41 and 44. An order to show cause was issued, extensive public hearings were had on the petition and the Board entered its order denying the petition and finding a need in the public for the operation of the trains. Plaintiff did not seek review in the state court as it had a right to do if dissatisfied with the order. Section 3809, R.C.M.1935. Neither did it bring proceedings similar to this under Title 28, Section 380, U.S.C.A. but continued operation of the trains under the order and in compliance therewith until December 10, 1942, when it discontinued the operation of the trains because of the order of the Office of Defense Transportation for the more effective prosecution of the war and the paramount interest of the United States, and without consideration of the question of necessity or covenience of the local residents. In my opinion this order of the Board became a final order and established beyond question the fact that when it was made in June, 1942, public necessity and convenience required the continued operation of the trains. It is to be assumed that the railroad in that case presented all of the evidence it had as to its actual cost of operating the trains, the number of passengers the train carried, the revenue derived by the trains, whether they operated at a loss or a profit that the

Board considered all of the evidence and made its finding and those things are now foreclosed here. Certainly, there has been no showing by the plaintiff that passenger travel on its railroads between 1942 and the present time has not continuously increased rather than decreased; that revenue derived by the plaintiff has steadily increased rather than decreased. There is no showing by the plaintiff here that since June, 1942, its greatest difficulty has not been in obtaining passengers to ride its trains, but in obtaining engines, cars, equipment and facilities to carry the passengers who are desirous of riding its trains.

The position of the plaintiff is that the question of public necessity and convenience is to be determined solely by whether or not the railroad can operate the particular train ordered operated at a profit or at a loss. The Supreme Court in Mississippi Railroad Commission v. Mobile & Ohio Railroad Company, supra, said: "Under this power of regulation a state may require carriers to provide reasonable and adequate facilities to serve not only the local necessities, but the local convenience, of the communities to which they are directly tributary. Lake Shore & Michigan Southern Ry. Co. v. Ohio, 173 U.S. 285, 19 S.Ct. 465, 43 L.Ed. 702; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Illinois, 177 U.S. 514, 20 S.Ct. 722, 44 L.Ed. 868; Atlantic Coast Line R. R. Co. v. North Carolina, Corporation Commission, 206 U.S. 1, 27 S.Ct. 585, 51 L.Ed. 933 [11 Ann.Cas. 398]; Missouri Pacific Ry. Co. v. Kansas, 216 U.S. 262, 30 S.Ct. 330, 54 L.Ed. 472; Chicago, Burlington & Quincy R. R. Co. v. Railroad Commission of Wisconsin, 237 U.S. 220, 35 S.Ct. 560, 59 L.Ed. 926; and such regulation may extend in a proper case to requiring the running of trains in addition to those provided by the carrier, even where this may involve some pecuniary loss. Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission [supra], and Missouri Pacific Ry. Co. v. Kansas [supra]." "The fact that the performance of the duty commanded by the order which is here in question may, as we have conceded for the purpose of the argument, entail a pecuniary loss, is, of course, as declared in the Atlantic Coast Line case, as a general rule, a circumstance to be considered in determining its reasonableness, as are the other criteria indicated in the opinion in that case. But where a duty which a corporation is obliged to render is a necessary consequence of the acceptance and continued enjoyment of its corporate rights, those rights not having been surrendered by the corporation, other considerations are, in the nature of things, paramount, since it cannot be said that an order compelling the performance of such duty at a pecuniary loss is unreasonable. To conclude to the contrary would be but to declare that a corporate charter was purely unilateral; that is, was binding in favor of the corporation as to all rights conferred upon it, and was devoid of obligation as to duties imposed, even although such duties were the absolute correlative of the rights conferred." Missouri Pacific Railway Company, v. Kansas, 216 U.S. at page 279, 30 S.Ct. at page 336.

In Northern Pacific Railway Company v. Board of Railroad Commissioners of the State of Montana, D.C., 46 F.Supp. 340, 341, the Court said: "The loss incurred by plaintiff for maintenance of train service is urged as a reason for discontinuance, but defendants contend that plaintiff may not discontinue a minor portion of service when public convenience and necessity demands that service, because of loss in operation, unless it is shown that the entire system is materially affected by such loss, citing authorities to sustain their position. They might have cited the Nagle case above for this Court made a similar statement in that decision."

In view of the language of those authorities, I cannot agree with plaintiff's contention that the question of the public necessity and convenience in the operation of the train is to be determined solely by whether or not the particular train can be operated at a profit or loss and particularly where the record is barren of any evidence of the financial condition of the railroad, whether its overall operations are carried on at such a profit that even if there be a small loss in the operation of the particular train it would make no particular difference in the railroad's financial structure as a whole, or would be such as would prevent the company from obtain

ing a fair rate upon the property invested in the public service. To summarize: that from the evidence the defendant Board could reasonably have found that the trains now being operated by the plaintiff between Wyola and Billings and Billings and Wyola were interstate trains; that their operation in Montana was solely in furtherance of their interstate operation based upon the necessity and convenience of its interstate passengers and business and without regard to the necessity and convenience of the people living between Wyola and Billings and without regard to intrastate patronage, and that for all practical purposes the people of that area were not served by rail transportation; that the only transportation afforded the people in the area, intrastate, looking to their necessity and convenience was that furnished by one and not more than two automobile buses operated by the Burlington Transportation Company, and therefore, from the evidence here it does not appear to me that the order of the Board at the time and under the circumstances when it was issued was arbitrary or unreasonable or in excess of its lawful powers, or that its enforcement would transgress against the Fourteenth Amendment to the Constitution or deprive the railroad company of its property without due process of law and I would dissolve the temporary restraining order heretofore issued and deny plaintiff's prayer for either a preliminary or permanent injunction and dismiss the action.